1

Daniel Low (Bar #218387)
**KOTCHEN & LOW LLP**
2
1918 New Hampshire Avenue NW
Washington, DC 20009
3
Telephone: (202) 471-1995
Fax: (202) 280-1128
4
Email: dlow@kotchen.com

5

*Attorney for Plaintiff and Putative Class*

6

7

8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
9
**SAN FRANCISCO DIVISION**

10

PURUSHOTHAMAN RAJARAM,
11

Plaintiff,          Case No. 3:22-cv-02920-LB
12

v.
13
**FIRST AMENDED COMPLAINT**

14
META PLATFORMS, INC.,          FOR EMPLOYMENT DISCRIMINATION

15
Defendant.          CLASS ACTION

16
JURY TRIAL DEMANDED

17

18

19          Plaintiff Purushothaman Rajaram brings this action on behalf of himself and a class of

20 similarly situated individuals to remedy pervasive, ongoing citizenship discrimination by Defendant

21 Meta Platforms, Inc.[1] (hereafter referred to as "Facebook") and alleges as follows:

22                                          **NATURE OF THE ACTION**

23          1.          Facebook is an American technology conglomerate that builds products designed to

24 enable users to connect with each other through mobile and in-home devices, computers, and virtual

25 reality headsets. Its most popular products include Facebook (a social networking platform),

26          _____
          [1] Facebook, Inc. changed its corporate name from Facebook, Inc. to Meta Platforms, Inc. in
27 October 2021, but is still commonly known as Facebook. *See* Meta Platforms, Inc. Form 10-K at 3,
*available at* https://bit.ly/3LxDXMt.
28

Instagram (a photo and videosharing platform), Messenger (a messaging application), WhatsApp (a secured messaging application), and Meta Quests (which designs virtual reality products). Facebook employs 60,600 individuals globally, and as of 2019 (the most recent EEO-1 data available), 34,634 of these employees were located in the United States.

2. When hiring for U.S. positions, Facebook considers United States citizens, lawful permanent residents (e.g., green card holders), and foreign citizens with proper work permits (e.g., H-1B or L-1 visa holders). But while visa holders make up just a fraction of the United States labor market,[2] Facebook prefers to hire visa-dependent workers for certain U.S. positions, as it can pay these employees less than American workers performing the same work. The Department of Justice has sued Facebook for this very practice and entered into a settlement agreement with Facebook in October 2021 to resolve the claims.[3]

3. Facebook's employment practices violate the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("§ 1981"). Plaintiff seeks, on his own behalf, and on behalf of a class of similarly situated individuals, declaratory, injunctive, and other equitable relief, compensatory and punitive damages, including pre- and post-judgment interest, attorneys' fees, and costs to redress Facebook's pervasive pattern and practice of citizenship discrimination.

**PARTIES**

4. Plaintiff Purushothaman Rajaram is a naturalized United States citizen, and is a resident of Pennsylvania.

5. Plaintiff is a member of a protected class, as recognized by § 1981.

6. Defendant Meta Platforms, Inc. ("Facebook") is an American social networking and technology company. It develops products which allow users to share information, photographs,

---

[2] As of September 2019, there were approximately 583,420 H-1B visa holders in the United States. *See* Priyanka Sangani, US has just over 580,000 H-1B holders, says USCIS, THE ECONOMIC TIMES (June 29, 2020), https://bit.ly/3txmo75.

[3] *See* Settlement Agreement at 2, *available at* https://bit.ly/3nxZifd.

FIRST AMENDED COMPLAINT

messages, and videos with other users. Facebook was created in 2004. It is incorporated in Delaware and maintains its corporate headquarters in Menlo Park, California.

## JURISDICTION

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1981(a).

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

9. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) as this matter is a class action with an amount in controversy of greater than $5 million, exclusive of interest and costs, and involves at least one class member who is a citizen of a state and is brought against a corporation that is a citizen of a different state.

10. This Court has personal jurisdiction over Facebook because it engages in continuous and systematic business contacts within the State of California and maintains a substantial physical presence in this State, including the operation of its corporate headquarters and more than ten offices. Additionally, as described below, Plaintiff's claims arise, in part, out of Facebook's activities in California.

## VENUE AND INTRADISTRICT ASSIGNMENT

11. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)-(c) because Facebook resides in this District, conducts business in this District, and engaged in discriminatory conduct in this District. Additionally, Facebook engages in continuous and systematic business contacts within this District, and maintains a substantial physical presence in this District, including the operation of its headquarters in Menlo Park, California (where almost one-third of its global employees work) and offices in Burlingame, Foster City, Fremont, Mountain View, San Francisco, Santa Clara, Sausalito, and Sunnyvale. Further, a substantial part of the events giving rise this action occurred in this District. For example, Mr. Rajaram was contacted by a Facebook recruiter who was located in Menlo Park, California, and Mr. Rajaram subsequently discussed and applied to

3

an open position with Facebook through that recruiter. Mr. Rajaram has also applied to other PLM roles with Facebook located in Menlo Park, California, but was not hired. As such, assignment in this Division is proper pursuant to Civil L.R. 3-2(c) because a substantial part of the events giving rise to this matter's claims occurred in this Division.

## STATEMENT OF FACTS

*Overview of Facebook's Business Model and Discriminatory Scheme*

12.    Facebook has approximately 37 offices in the United States and employs over 34,600 employees domestically. The company earned over $86 billion in revenue in the past fiscal year, with a net income of $29.1 billion. Facebook derives approximately 45% of its revenue from the United States and Canada. Facebook has grown and expanded its U.S. operations over the years through hiring.

13.    Hiring employees increases costs, as it adds individuals to payroll, and there are additional costs associated with recruiting, hiring, and onboarding new employees. In order to reduce costs, Facebook prefers to hire visa workers for certain positions—namely, H-1B visa workers. *See* Compl. ¶¶ 2-4, *United States of America v. Facebook, Inc.*, OCAHO Case No. 2021B00007 (Dec. 3, 2020), *available at* https://bit.ly/3rMJzbF.

14.    H-1B visas are intended to bring foreign workers to the United States to perform services in specialty occupations when there are insufficient workers in the U.S. to perform a specific job. *See* 8 C.F.R. § 214.2(h)(1)(ii)(B); 8 C.F.R. § 214(i)(1). By law, H-1B visa workers must be paid by their employer at least as much as other individuals with similar experience and qualifications for the specific employment in question. *See* 20 C.F.R. § 655.731(a). Thus, the only reason Facebook would choose to hire and relegate certain positions to visa holders is to pay them less than American counterparts, an unlawful practice that is known in the industry as "wage theft." If Facebook in fact paid its visa workers the same as it paid American workers, it would have every incentive to hire, for all positions, the most qualified individual (regardless of his or her visa status).

15.    Facebook hires visa workers in two ways. First, Facebook hires visa workers directly from the labor market, utilizing its own recruiters and job postings to attract candidates. Facebook

must sponsor visas for these employees to allow them to legally work in the U.S., and Facebook therefore retains considerable control over these employees. Over the past nine years, Facebook has secured over 20,000 H-1B visas (including fresh visas, visa extensions, and visa amendments) for its U.S. workforce. Facebook is an H-1B visa dependent employer, meaning that 15% or more of its U.S. workforce is on an H-1B visa. And as Facebook's U.S. workforce continues to grow, so does its reliance on H-1B visa workers, as indicated by the increased number of H-1B visa approvals below.

| Year | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2022 |
|---|---|---|---|---|---|---|---|---|---|
| H-1B Visa Approvals[4] | 412 | 527 | 894 | 1,107 | 1,566 | 2,467 | 3,552 | 4,408 | 5,100 |

The vast majority of these visas are secured for employees who will perform software engineer roles in the United States. *See id.* A large numbers of H-1B visas are also secured for Facebook's Research Scientists, Data Scientists, Data Engineers, and Engineering Managers. *See id.*

16.     Second, Facebook contracts with third party vendors such as Infosys and Accenture that provide it with visa workers who work out of one of Facebook's 42 U.S. offices. While the consulting or contracting companies sponsor visas for these employees, Facebook interviews them, maintains control over their hiring and termination from Facebook projects, and supervises and directs their day-to-day activities and assignments.

17.     Facebook's preference for hiring and employing visa workers is no secret. In fact, in December 2018, the Immigrant and Employee Rights Section ("IER") within the Civil Rights Division of the U.S. Department of Justice launched an investigation into Facebook's recruitment and hiring practices, focusing specifically on whether Facebook engaged in unfair recruitment and hiring practices based on citizenship or immigration status in violation of 8 U.S.C. § 1324b(a)(1). *See* Compl. ¶ 9, *United States of America v. Facebook, Inc.*, OCAHO Case No. 2021B00007 (Dec. 3, 2020), *available at* https://bit.ly/3rMJzbF. Following an almost two-year investigation, on October 9,

---

[4] *See* H-1B Employer Data Hub Files, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (last accessed Mar. 30, 2022), *available at* http://bit.ly/2OpEyr2.

FIRST AMENDED COMPLAINT

2020, the IER notified Facebook that it had "found reasonable cause to believe that Facebook had engaged in a pattern or practice of unfair immigration-related employment practices violating 8 U.S.C. § 1324b(a)(1)," which prohibits discrimination based on an individual's citizenship status. *Id.* ¶ 10.

18.     The Department of Justice subsequently filed a complaint against Facebook on December 3, 2020, alleging that Facebook intentionally discriminates against U.S. workers because of their citizenship or immigration status by failing to recruit, consider, or hire these workers for permanent positions that it earmarks for the company's visa holders. *Id.* ¶¶ 2-3. The complaint alleges that from at least January 1, 2018 to at least September 18, 2019, "Facebook's standard operating procedure was to decline to hire . . . U.S. worker[s] for [2,606] PERM-related position[s]," despite the applicants' qualifications, and to instead fill these vacancies only with PERM beneficiaries (Facebook employees who were temporary visa holders seeking permanent positions within Facebook and lawful permanent residency in the U.S.). *Id.* ¶¶ 42, 48-49. Facebook took active steps to discourage U.S. workers from applying to the positions reserved for its visa holders, including by failing to advertise the open positions on its website, refusing to accept online applications for the roles, and requiring all interested candidates to mail in copies of their applications. *Id.* ¶ 2. Through this practice, Facebook was able to ensure that its temporary visa holders secured permanent positions through the permanent labor certification process, allowing them to remain in the U.S. beyond the 6-year period afforded by their H-1B visas. *Id.* ¶¶ 2, 17.

19.     In October 2021, Facebook and the Department of Justice entered into a settlement agreement under which Facebook is required to pay $4,750,000 to the United States Treasury in civil penalties and $9,500,000 to a Settlement Fund for potential victims of Facebook's discrimination. *See* Settlement Agreement at 2, *available at* https://bit.ly/3nxZifd. In addition to agreeing not to discriminate in hiring and recruitment on the basis of citizenship or immigration status, Facebook also agreed to make changes to its recruitment process in connection with its PERM applications, including posting all PERM-related positions on Facebook's Career website in the same manner as other non-PERM roles, accepting electronic applications for PERM-related positions, entering all

applicants to PERM-related positions into Facebook's recruiting system, and only rejecting a U.S. worker for the position for lawful, job-related reasons. *See id.* at 2-3.

20.    Facebook's 2013 to 2020 PERM applications figures are as follows, showing again its increased reliance on visa workers.

| Year | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|
| PERM Applications[5] | 95 | 256 | 419 | 732 | 692 | 1,443 | 1,481 | 1,547 |

21.    Like Facebook's H-1B visa applications, its PERM applications are mostly filed for Software Engineers, with a high number of applications also filed for Research Scientists, Data Scientists, Data Engineers, and Engineering Managers at Facebook.[6]

*Plaintiff Rajaram's Experiences*

22.    Mr. Rajaram is an experienced and highly skilled information technology professional with almost twenty years of experience in solution architecting and delivering enterprise Product Lifestyle Management ("PLM") software solutions to Fortune 500 companies. Mr. Rajaram holds a Bachelor of Engineering degree from Madras University in Chennai and a Diploma in Mechanical Engineering from the Directorate of Technical Education in Chennai. Throughout the course of his career, he has developed an array of technical skills, including in PLM administration, implementation, integration, and support, project and vendor management, solution architecture, requirements gathering, business process mapping, and data migration. From June 2014 forward, Mr. Rajaran has worked as an independent PLM Technical Consultant servicing aerospace, energy, and technology customers (among others).

23.    Mr. Rajaram was considered for employment with Facebook on more than four occasions, but Facebook failed to hire him each time because of the company's systematic and continuous discriminatory scheme.

---

[5] *See* Performance Data, U.S. DEPARTMENT OF LABOR (last accessed Jan 10, 2022), *available at* https://bit.ly/3HP5KpF.

[6] *See id.*

FIRST AMENDED COMPLAINT

24.    First. In May 2020, Mr. Rajaram was contacted via WhatsApp by Prashanth Sadasivaiah, an employee of Infosys Limited, regarding a PLM architect position with Facebook. Infosys Limited is a third party vendor with whom Facebook contracts to hire employees to perform IT work. Mr. Rajaram expressed interest in the position and submitted a copy of his resume, which listed his citizenship status as a naturalized U.S. citizen (the same is also mentioned on his LinkedIn profile page).

25.    Mr. Rajaram was then interviewed by three Infosys employees, Mr. Sadasivaiah, J. Moorthy, and Aravind Tungaturi. The video interview took place via Skype on May 31, 2020. Mr. Rajaram performed well during the interview and received positive feedback from his interviewers. He was told he was the "right guy" and "perfect" for the role.

26.    On June 1, 2020 Mr. Rajaram received a telephone call from Pradeep Kulkarni, the Infosys client partner for Facebook, asking whether Mr. Rajaram would be available in approximately thirty minutes to interview with Facebook employee Rajesh Pralayakaveri regarding the PLM architect role so that Facebook could make a hiring decision. Later that evening, Mr. Rajaram underwent a telephone interview with Mr. Pralayakaveri, whom Mr. Rajaram understands to be working for Facebook in the U.S. on an H-1B visa. Mr. Pralayakaveri was a junior employee, which was evident by his questioning of Mr. Rajaram. Despite performing well in his interviews and being well-qualified for the role, Mr. Rajaram was not hired by Facebook.

27.    Second. On June 19, 2020, Bobb Omel, a PLM Analyst at Facebook, referred Mr. Rajaram for a full-time position with the company. Prior to this referral, Mr. Rajaram shared a copy of his resume with Mr. Omel, which notes that he is a naturalized U.S. citizen. Mr. Rajaram was subsequently contacted by Khaled Mansour, a Technical Sourcer for Facebook on June 23 who worked out of Facebook's Menlo Park, California location. Mr. Rajaram discussed the PLM Analyst position with Mr. Mansour on June 29 for approximately 45 minutes to 1 hour. During that time, Mr. Rajaram detailed his experience in the PLM field. Mr. Mansour stated that Facebook was very interested in Mr. Rajaram's candidacy and that Mr. Mansour would present him to the team that was hiring for the role. However, on July 6, Mr. Mansour informed Mr. Rajaram that "the team decided

FIRST AMENDED COMPLAINT

not to move forward with the next steps" and Facebook did not hire him for the PLM Analyst role. No further explanation was provided for Facebook's rejection of Mr. Rajaram's candidacy. On information and belief, Facebook staffed the role with an H-1B visa holder.

28. <u>Third and Fourth</u>. On March 10, 2022 and March 22, 2022, Mr. Rajaram applied to Application Manager, PLM positions with Facebook on its career website. Mr. Rajaram understood these to be remote roles. As part of his applications, he submitted online a copy of his resume which states that he is a naturalized U.S. citizen. Despite being well-qualified for the roles, Mr. Rajaram received no response from Facebook, and was not interviewed or hired for the Application Manager, PLM roles.

29. Mr. Rajaram also applied to PLM Manager, PLM Project Manager, and PLM Architect roles with Facebook over the past few years. These positions were located in Menlo Park, California and Austin, Texas. However, Mr. Rajaram never received a response from Facebook to his online applications, and he was not hired for these roles.

30. In each instance, Facebook did not hire Mr. Rajaram because of his citizenship, and Mr. Rajaram would have been hired absent Facebook's systematic preference for visa holders in hiring for certain U.S. positions.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this Class Action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), seeking injunctive, declaratory, equitable, and monetary relief for Facebook's systematic pattern and practice of discrimination against and non-visa holding individuals in the United States. This action is brought on behalf of the following class:

> All individuals who are not visa holders who applied for the following positions with (or within) Facebook in the U.S., either directly or through a third party vendor, and were not hired: Software Engineer, Research Scientist, Data Scientist, Data Engineer, Engineering Manager, and PLM roles.

32. Members of the class are so numerous and geographically dispersed across the United States that joinder is impracticable. While the exact number of class members is unknown to Plaintiff, it is believed to be in the thousands. Furthermore, class members are readily identifiable from information and records in Facebook's possession.

FIRST AMENDED COMPLAINT

33.     There are numerous questions of law and fact common to members of the class. Among the common questions of law or fact are: (a) whether Facebook has intentionally discriminated against individuals who are not visa holders in making hiring decisions; (b) whether Facebook has intentionally favored visa holders in hiring decisions, and/or whether Facebook has intentionally disfavored non-visa holders in hiring decisions; (c) whether Facebook's policy and practice of relying on visa holders is intentionally discriminatory; (d) whether Facebook has violated § 1981; (e) whether equitable and injunctive relief is warranted for the class; and (f) whether compensatory and/or punitive damages are warranted for the class.

34.     Plaintiff's claims are typical of the class. Members of the class were damaged by the same discriminatory practices employed by Facebook.

35.     Plaintiff will fairly and adequately protect the interest of other class members because he has no interest that is antagonistic to or which conflicts with those of any other class member, and Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in class litigation to represent him and the class.

36.     Plaintiff and the class he seeks to represent have suffered substantial losses in earnings and other employment benefits and compensation as a result of Facebook's actions.

37.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Facebook has acted and/or refused to act on grounds generally applicable to the class, making declaratory and injunctive relief appropriate with respect to Plaintiff and the class as a whole. Members of the class are entitled to declaratory and injunctive relief to end Facebook's systematic, common, uniform, unfair, and discriminatory policies and practices.

38.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because the issue of liability is common to the class and the common nucleus of operative facts forms the central issue, which predominates over individual issues of proof. The primary question common to the class is whether Facebook has discriminated on the basis of citizenship in its hiring practices. This question is central to the case and predominates over individual issues among the members of the proposed class. Facebook has engaged in a common course of discriminatory conduct in a manner

FIRST AMENDED COMPLAINT

that has harmed all class members. Class certification under Rule 23(b)(3) would be superior to other methods for fair and efficient resolution of the issues because certification will avoid the need for repeated litigation by each individual class member. The instant case will be eminently manageable as a class action. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

39.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(c)(4) to litigate Plaintiff's claims for prospective classwide compliance and affirmative injunctive relief necessary to eliminate Facebook's discrimination. Certification under this rule is also appropriate to decide whether Facebook has adopted a systemic pattern and practice of citizenship discrimination in hiring. Certification under this rule is also appropriate to determine classwide damages, including punitive damages.

## COUNT I
### Disparate Treatment on the Basis of Citizenship in Violation of 42 U.S.C. § 1981
### (On behalf of Plaintiff and the Class)

40.     Plaintiff re-alleges each preceding paragraph as though fully set forth herein.

41.     This claim is brought by Plaintiff on behalf of himself and the class.

42.     Throughout the class liability period, Facebook has engaged in a pattern and practice of discriminating against individuals who are not visa holders by: (a) knowingly and intentionally favoring individuals with visas in job placement (*i.e.*, hiring/staffing) decisions, and (b) knowingly and intentionally disfavoring individuals who are not visa holders (including Plaintiff) in job placement (*i.e.*, hiring/staffing) decisions.

43.     As a direct and proximate result of Facebook's intentional discrimination, Plaintiff and class members have been denied employment and positions with Facebook.

44.     Facebook's actions constitute unlawful discrimination on the basis of citizenship in violation of 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the class pray for relief as follows:

a.     Certification of the case as a class action pursuant to Fed. R. Civ. P. 23;

FIRST AMENDED COMPLAINT

b.     Designation of Plaintiff as representative of the class;

c.     Designation of Plaintiff's counsel as counsel for the class;

d.     A declaratory judgment that the practices complained of herein are unlawful and violates the Civil Rights Act of 1866, 42 U.S.C. § 1981;

e.     A permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in unlawful policies, practices, customs, and usages set forth herein;

f.     Order Defendant to adopt a valid, non-discriminatory method for hiring, staffing, and other employment decisions;

g.     Order Defendant to post notices concerning its duty to refrain from discriminating against employees on the basis of citizenship;

h.     Award Plaintiff and the Class damages – including (without limitation) compensatory, exemplary, and punitive damages for the harm they suffered as a result of Defendant's violations of § 1981;

i.     Award Plaintiff and the Class pre- and post-judgment interest at the prevailing rate on the compensatory damages as a result of Defendant discriminating against them in violation of § 1981;

j.     Award Plaintiff and the Class front- and back-pay, instatement, and such other equitable relief as the Court deems just and appropriate;

k.     Award reasonable attorneys' fees, expert witness fees, expenses, and costs of this action and of prior administrative actions; and

l.     Award Plaintiff and the Class such other relief as this Court deems just and appropriate.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff and the Class respectfully demand a trial by jury on all issues properly triable by a jury in this action.

FIRST AMENDED COMPLAINT

DATED:    June 27, 2022                     Respectfully submitted,

By: /s/Daniel Low
Daniel Low, SBN 218387
**KOTCHEN & LOW LLP**
1918 New Hampshire Avenue NW
Washington, DC 20009
Telephone: (202) 471-1995
Email: dlow@kotchen.com

*Attorney for Plaintiff and Putative Class*

FIRST AMENDED COMPLAINT