Daniel Low, SBN 218387
dlow@kotchen.com
**KOTCHEN & LOW LLP**
1918 New Hampshire Ave. NW
Washington, DC 20009
Telephone: (202) 471-1995
Facsimile: (202) 280-1128

*Attorneys for Plaintiff and Putative Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| PURUSHOTHAMAN RAJARAM, <br><br> Plaintiff, <br><br> v. <br><br> META PLATFORMS, INC., <br><br> Defendant. | Case No. 3:22-cv-02920-LB <br><br> **CLASS ACTION** <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(f)** <br><br> Hon. Laurel Beeler <br><br> Date: October 6, 2022 <br> Time: 9:30 a.m. <br> Location: Courtroom B |

1

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iii

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE ... 1

I.        BACKGROUND ................................................................................................. 1

    A.     Meta's Discriminatory Scheme. ................................................................. 1

    B.     Meta's Failure to Hire Plaintiff Based on His Citizenship Status. .............. 3

II.       LEGAL STANDARD ......................................................................................... 5

III.      ARGUMENT ....................................................................................................... 5

    A.     Plaintiff's Claim is Cognizable Under Section 1981. .................................. 6

    B.     Plaintiff's Allegations Create a Plausible Inference of Discriminatory Intent. .......... 10

    C.     Plaintiff Is Not Required to Allege But For Causation When Bringing Pattern Or Practice Claims. .................................................................................... 15

    D.     Neither Rule 12(f) Nor Rule 11 Provides Grounds for Striking Plaintiff's Allegations. ................................................................................................. 16

IV.       CONCLUSION ................................................................................................. 22

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Conboy,* 156 F.3d 167 (2d Cir. 1998) ................................................................... 7

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .............................................................................. 5

*Beck v. Boeing Co.,* 60 F. App'x 38 (9th Cir. 2003) .......................................................... 13

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) .............................................................. 5

*Berry v. Oswalt,* 143 F.3d 1127 (8th Cir. 1998) ................................................................ 14

*Brown v. Nucor Corp.,* 785 F.3d 895 (4th Cir. 2015) ........................................................ 10

*Chaiffetz v. Robertson Research Holding, Ltd.,* 798 F.2d 731 (5th Cir. 1986) .................. 8

*Christian v. Mattel, Inc.,* 286 F.3d 1118 (9th Cir. 2002) ................................................... 19

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,* 140 S.Ct. 1009
(2020) ......................................................................................................................... 11, 15

*Diaz v. Am. Tel. & Tel.,* 752 F.2d 1356 (9th Cir. 1985) .............................................. 12, 13

*EEOC v. Gen. Tel. Co. of Nw., Inc.,* 599 F.2d 322 (9th Cir. 1979) .................................. 11

*Erickson v. Pardus,* 551 U.S. 89 (2007) ....................................................................... 5, 12

*Fraker v. Bayer Corp.,* No. CVF08-1564, 2009 WL 5865687 (E.D. Cal. Oct. 6,
2009) ............................................................................................................................... 20

*Gavalik v. Cont'l Can Co.,* 812 F.2d 834 (3d Cir. 1987) .................................................. 15

*GN Resound S/A v. Callpod, Inc.,* No. C 11-04673, 2013 WL 5443046 (N.D. Cal.
Sept. 30, 2013) ............................................................................................................... 21

*Graham v. Richardson,* 403 U.S. 365 (1971) ..................................................................... 6

*Gray v. Bayer Corp.,* No. 08-4716, 2010 WL 1375329 (D.N.J. Mar. 31, 2010) .............. 20

*Hawn v. Executive Jet Mgmt.,* 615 F.3d 1151 (9th Cir. 2010) .......................................... 13

*Hazelwood Sch. Dist. v. United States,* 433 U.S. 299 (1977) ...................................... 12, 13

*Heldt v. Tata Consultancy Servs., Ltd.,* 132 F. Supp. 3d 1185 (N.D. Cal. 2015) ............... 5

*Hernandez v. Siri & Son Farms, Inc.,* No. 6:20-CV-00669, 2021 WL 4999022 (D.
Or. Sept. 30, 2021) ....................................................................................................... 6, 9

*Holmes v. Elec. Document Processing, Inc.,* 966 F. Supp. 2d 925 (N.D. Cal. 2013) ........... 5, 16

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.,* 851 F. Supp. 2d 746
(S.D.N.Y. 2012) .............................................................................................................. 21

*In re Connetics Corp. Sec. Litig.,* No. 07-02940 SI, 2008 WL 3842938 (N.D. Cal.
Aug. 14, 2008) ................................................................................................................ 21

*In re Connetics Corp. Secs. Litig,,* 542 F. Supp. 2d 996 (N.D. Cal. 2008) ................. 19, 20

*In re Cylink Secs. Litig.,* 178 F.Supp.2d 1077 (N.D. Cal. 2001) ...................................... 19

*In re Keegan Mgmt. Co., Sec. Litig.,* 78 F.3d 431 (9th Cir. 1996) .............................. 18, 21

*In re New Century,* 588 F. Supp. 2d 1206 (C.D. Cal. 2008) ............................................. 19

*Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324 (1977) ............................ 10, 11, 13, 15

*Jatoi v. Hurst-Euless-Bedford Hosp. Authority,* 807 F.2d 1214 (5th Cir. 1987) ............... 9

*Jimenez v. Servicios Agricolas Mex, Inc.,* 742 F. Supp. 2d 1078 (D. Ariz. 2010) ........... 6, 7, 8, 9

iii

*Kalbers v. U.S. Dep't of Justice*, No. CV 18-8439, 2020 WL 6204565 (C.D. Cal. Oct. 9, 2020) ................................................................................................ 18

*Karp v. CIGNA Healthcare, Inc.*, 882 F. Supp. 2d 199 (D. Mass. 2012) .................................... 14

*London v. City of Redlands*, No. EDCV 17-185, 2017 WL 11635006 (C.D. Cal. May 1, 2017) ....................................................................................................... 22

*Luxul Tech. Inc. v. NectarLux, LLC*, No. 14-CV-03656-LHK, 2015 WL 4692571 (N.D. Cal. Aug. 6, 2015) ........................................................................... 20, 21

*Maack v. Wyckoff Heights Med. Ctr.*, No. 15 CIV. 3951 ER, 2016 WL 3509338 (S.D.N.Y. June 21, 2016) ............................................................................. 9

*Mancini v. Ins. Corp. of N.Y.*, No. 07-cv-1750, 2008 WL 11337258 (S.D. Cal. May 29, 2008) ...................................................................................... 16

*Martinez v. Oakland Scavenger Co.*, 680 F. Supp. 1377 (N.D. Cal. 1987) ............................... 12

*McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976) ...................................... 7, 8

*Metlife Bank, N.A. v. Badostain*, No. 1:10-cv-118, 2010 WL 5559693 (D. Idaho Dec. 30, 2010) ............................................................................................ 18

*Meyenhofer v. Larsen & Toubro Infotech Ltd.*, 503 F. Supp. 3d 39 (S.D.N.Y. 2020) ......................................................................................................... 8

*Moralez v. Whole Foods Mkt. Cal., Inc.*, No. 14-cv-05022-EMC, 2016 WL 845291 (N.D. Cal. Mar. 4, 2016) .................................................................. 15, 16

*Murillo v. Servicios Agricolas Mex Inc.*, No. CV-07-2581, 2012 WL 1030084 (D. Ariz. Mar. 27, 2012) ................................................................................. 6

*Obrey v. Johnson*, 400 F.3d 691 (9th Cir. 2005) ................................................... 12, 14

*Operating Eng'rs Pension Trust v. A–C Company,* 859 F.2d 1336 (9th Cir. 1988) ................. 18

*Parks v. Buffalo City Sch. Dist.*, No. 17-CV-631S, 2020 WL 2079320 (W.D.N.Y. Apr. 30, 2020) ......................................................................................... 16

*Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048 (N.D. Cal. 2004) .......................... 16

*Polich v. Burlington N., Inc.*, 942 F.2d 1467 (9th Cir. 1991) .................................... 22

*Richardson v. City of N.Y.*, No. 17-CV-9447, 2018 WL 4682224 (S.D.N.Y. Sept. 28, 2018) ........................................................................................... 11

*Sagana v. Tenorio*, 348 F.3d 731 (9th Cir. 2004) ................................................ 6, 7, 9

*Sec. & Exch. Comm'n v. Strong Inv. Mgmt.*, No. 8:18-CV-00293, 2018 WL 8731559 (C.D. Cal. Aug. 9, 2018) ................................................................... 21

*Slaight v. Tata Consultancy Servs., Ltd.*, 842 F. App'x 66 (9th Cir. 2021) ..................... 12, 13

*Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439 (5th Cir. 1992) ......................... 21

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002) ............................................... 13, 15

*Takahashi v. Fish and Game Comm'n*, 334 U.S. 410 (1948) ...................................... 7

*Thomas v. Rohner-Gehrig & Co.*, 582 F. Supp. 669 (N.D. Ill. 1984) ............................... 6

*Tomason v. Stanley,* No. 6:13-CV-42, 2013 WL 5652040 (S.D. Ga. Oct. 16, 2013) ............... 9

*Topadzhikyan v. Glendale Police Dep't*, No. CV 10-387, 2010 WL 11459912 (C.D. Cal. Apr. 2, 2010) ............................................................................. 5

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990) ........................... 21, 22

iv

*United States v. Richard Dattner Architects*, 972 F. Supp. 738 (S.D.N.Y.1997) ........................ 6

Usher v. City of L.A., 828 F.2d 556 (9th Cir. 1987) ...................................................... 5

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ........................... 10

*Walling v. Beverly Enters.,* 476 F.2d 393 (9th Cir. 1973) ............................................... 5

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................. 13

*Williams v. Carson Concrete Corp.*, No. 20-5569, No. 2021 WL 1546455 (E.D. Pa. Apr. 20, 2021) ......................................................................................... 15

*Williams v. Tech Mahindra (Ams.), Inc.*, No. 3:20-cv-04684, 2021 WL 302929 (D.N.J. Jan. 29, 2021) ........................................................................... 15, 16

## STATUTES

42 U.S.C. § 1981 .................................................................................... passim

8 U.S.C. § 1324b ................................................................................... 3, 14

## RULES

Fed. R. Civ. P. 11 .................................................................................. passim

Fed. R. Civ. P. 12 ............................................................................. 1, 5, 16, 17

## TREATISES

5B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE (3d ed. 2007) ................... 5

K. Geisler, *Fissures in the Valley: Searching for a Remedy for U.S. Tech Workers Indirectly Displaced by H-1B Visa Outsourcing Firms*, 95 Wash. U. L. Rev. 465 (2017) ......................................................................................... 8

Naomi Schoenbaum, *The Case for Symmetry in Antidiscrimination Law*, 2017 WIS. L. REV. 69 (2017) ........................................................................... 8

## REGULATIONS

20 C.F.R. § 655.731 ................................................................................... 2

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE**

Defendant Meta Platforms, Inc. ("Meta") moves to dismiss Plaintiff's class action complaint, which alleges that Meta engages in a pattern or practice of citizenship discrimination in hiring for certain U.S. positions in violation of 42 U.S.C. § 1981. In the alternative, Meta moves to strike five paragraphs from the First Amended Complaint pursuant to Rule 12(f) that it presumes were not independently investigated or verified by Plaintiff or his counsel. But Meta's motion to dismiss (Dkt. 25) should be denied because Plaintiff's Section 1981 citizenship claim is cognizable, as Section 1981 permits a United States citizen to bring claims for citizenship or alienage discrimination, as district courts within the Ninth Circuit have consistently held. In addition, Plaintiff plausibly alleges that in failing to hire him on four or more occasions, Meta acted with discriminatory intent. And while not required because Plaintiff is pursuing pattern or practice discrimination claims in this action (as opposed to an individual Section 1981 claim), Plaintiff has plausibly alleged "but for" causation. This Court should deny Meta's motion to strike under Rule 12(f) because Meta fails to demonstrate – or even argue – that the allegations at issue were "redundant, immaterial, impertinent, or scandalous," and under Rule 11 because Meta failed to follow the procedural requirements of Rule 11 and because Plaintiff's counsel independently investigated and verified the allegations at issue in Plaintiff's First Amended Complaint.

## I.   BACKGROUND

### A.   Meta's Discriminatory Scheme.

Plaintiff Purushothaman Rajaram, a naturalized U.S. citizen, alleges that Meta engages in a pattern or practice of citizenship discrimination in violation of 42 U.S.C. § 1981 by favoring visa holders for certain U.S. positions. *See* 1st Am. Compl. ("FAC") ¶¶ 2-3, 31, 40-44 (Dkt. 10). Plaintiff seeks to represent a class of non-visa holders who applied for Software Engineer, Research Scientist, Data Scientist, Data Engineer, Engineering Manager, and Product Lifecycle Management ("PLM") roles with (or within) Meta in the United States, but were denied employment by the company. *Id.* ¶ 31.

Meta (formerly known as Facebook) is an American social networking and technology company that develops products for users to share content and to communicate with other users. *Id.* ¶ 6. Meta employs approximately 60,000 employees worldwide and more than 35,000 employees domestically. *Id.* ¶ 1.

Like other U.S. companies, when looking to staff an open position in the U.S., Meta considers

United States citizens, lawful permanent residents (green card holders), and foreign workers who require a visa (typically an H-1B visa) to work in the U.S. *Id.* ¶ 2. H-1B visas are limited in number and intended only to bring foreign workers to the U.S. to perform services in specialty occupations where there is a labor shortage domestically. *Id.* ¶ 14. The U.S. government caps the number of H-1B visas it issues each year – awarding just 65,000 H-1B visas annually in a highly competitive lottery process – and reserving an additional 20,000 H-1B visas for individuals with advanced degrees.[1] H-1B visa holders are not intended to serve as "cheap" labor, as federal law requires H-1B visa holders to be paid by their employer at least as much as other individuals with similar experience and qualifications for the specific employment in question. *Id.* ¶ 14 (citing 20 C.F.R. § 655.731(a)).

While H-1B visa holders make up just a fraction of the U.S. workforce (around 580,000 of 157.53 million workers in 2019,[2] or 0.37%), Meta prefers to hire and employ H-1B visa holders in the U.S. because, in violation of U.S. visa laws, it can pay these employees less than their American counterparts – a practice known as wage theft. FAC ¶¶ 2 & n.2, 13-14 (Dkt. 10). By engaging in wage theft, Meta is able to save on payroll costs by hiring H-1B visa holders for certain positions in the U.S. *Id.* ¶ 14. Meta hires H-1B visa holders both directly from the labor market using its own recruiters, and also through third party vendors who provide it with H-1B visa holders. *Id.* ¶¶ 15-16. It staffs these individuals primarily in Software Engineer roles, but also uses H-1B workers to fill Research Scientist, Data Scientist, Data Engineer, Engineering Manager, and PLM roles with Meta. *Id.* ¶ 21. As Meta continues to grow, so does its reliance on H-1B visa workers, which is evidenced by its steady increase in H-1B approvals for fresh visas, visa amendments, and visa extensions:

| Year | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2022 |
|------|------|------|------|------|------|------|------|------|------|
| H-1B Visa Approvals[3] | 412 | 527 | 894 | 1,107 | 1,566 | 2,467 | 3,552 | 4,408 | 5,100 |

---

[1] *See* USCIS Reaches Fiscal Year 2022 H-1B Cap, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (Feb. 28, 2022), https://www.uscis.gov/newsroom/alerts/uscis-reaches-fiscal-year-2022-h-1b-cap.

[2] *See* FAC ¶ 2 n.2 (Dkt. 10); Employment in the United States from 2013 to 2023, STATISTA (last accessed Sept. 5, 2022), *available at* https://www.statista.com/statistics/269959/employment-in-the-united-states/

[3] *See* H-1B Employer Data Hub Files, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (last accessed Mar. 30, 2022), *available at* http://bit.ly/2OpEyr2.

*Id.* ¶ 15.

The same type of discrimination at issue here – unfair recruitment and hiring practices based on citizenship—was the focus of a recent investigation of Meta undertaken by the Department of Justice ("DOJ") in 2018. FAC ¶ 17. The DOJ investigated Meta's recruitment and hiring practices for over two years, and, on October 9, 2020, it notified Meta that it had "'found reasonable cause to believe that [Meta] had engaged in a pattern or practice of unfair immigration-related employment practices violating 8 U.S.C. § 1324b(a)(1),'" which prohibits discrimination based on an individual's citizenship status. *Id.* (quoting the DOJ's complaint). Following this finding, the DOJ filed a complaint against Meta on December 3, 2020 which alleged, *inter alia,* that Meta intentionally discriminates against U.S. workers based on their citizenship in its recruiting and hiring practices, and that Meta's "standard operating procedure" from at least January 1, 2018 to at least September 18, 2019 was to decline to hire U.S. workers for certain PERM positions[4] it had earmarked for visa workers and took active steps to deter U.S. workers from applying to those positions. *Id.* Ultimately, the DOJ and Meta entered into a settlement agreement in October 2021 which required Meta to pay $14.25 million – $4.75 million in civil penalties, and $9.5 million to a settlement fund for potential victims of Meta's citizenship discrimination. *Id.* ¶ 19.

**B.** **Meta's Failure to Hire Plaintiff Based on His Citizenship Status.**

Plaintiff is a highly skilled information technology professional who specializes in PLM and has almost twenty years of relevant experience, working in both full-time employee and consultant roles. *Id.* ¶ 22. Plaintiff holds a Bachelor of Engineering Degree from Madras University in Chennai and a Diploma in Mechanical Engineering from the Directorate of Technical Education in Chennai. *Id.* He currently resides in Pennsylvania. *Id.* ¶ 4.

Plaintiff is a victim of Meta's systematic preference for visa holders for certain U.S. positions, and was repeatedly rejected by Meta because of his status as a U.S. citizen. *Id.* ¶¶ 23, 30. From May 2020 forward, Plaintiff applied to more than four PLM roles with Meta, but each time, the company failed to hire him on account of its discriminatory scheme. *Id.* ¶ 23. In May 2020, Plaintiff was contacted by Infosys Limited, a third party vendor for Meta, regarding a PLM Architect position with Meta. Plaintiff

---

[4] PERM positions are for temporary visa holders seeking permanent positions and lawful permanent residency in the U.S. *Id.* ¶ 18.

expressed interest in the role, and submitted a copy of his resume which listed his citizenship status (Plaintiff's citizenship status is also available on his LinkedIn page). *Id.* ¶ 24. Plaintiff performed well in his interview with three Infosys employees, which took place on May 31, 2020, and was told by those interviewers that he was the "right guy" and "perfect" for the role." *Id.* ¶ 25. Plaintiff then interviewed with Meta employee Rajesh Pralayakaveri, a junior employee of Meta whom Plaintiff believes to be working for Meta in the U.S. on an H-1B visa. *Id.* ¶ 26. Despite performing well in the interview and being well qualified for the PLM architect role, following his interview with Meta, Meta declined to hire him.

In June 2020, Bob Omel, a PLM Analyst at Meta, referred Plaintiff for a full-time PLM Analyst position with the company, and shared Plaintiff's resume (listing his citizenship status) with Meta. *Id.* ¶ 27. Plaintiff was then contacted by Khaled Mansour, a Technical Sourcer for Meta on June 23, and interviewed with him for approximately 45 minutes to one hour. *Id.* During that time, Plaintiff shared his PLM experience in detail, and received positive feedback from Mr. Mansour, who stated that Meta was very interested in his candidacy, and that he would be presented to the team in charge of hiring for the role. *Id.* However, despite Plaintiff's qualifications and strong interview performance, he was informed by Mr. Mansour on July 6 that the team had decided not to move forward with him. *Id.* On information and belief, the PLM Analyst role was ultimately filled by an H-1B visa holder. *Id.*

On March 10, 2022 and March 22, 2022, Plaintiff applied to Application Manager, PLM positions with Meta on its career website—positions he again was well qualified for given his considerable PLM experience. *Id.* ¶ 28. As part of the application process, Plaintiff submitted a copy of his resume which noted that he is a naturalized U.S. citizen. *Id.* Meta failed to contact, interview, or hire Plaintiff for both roles, and no justification was provided by Meta for its failure to hire Plaintiff. *Id.*

Finally, over the past few years, Plaintiff has applied to a variety of PLM roles with Meta that were located in Menlo Park, CA and Austin, TX. *Id.* ¶ 29. Again, despite his strong PLM qualifications and experience in that field, Meta never contacted Plaintiff regarding his applications, and failed to hire him for the PLM Manager, PLM Project Manager, and PLM Architect roles. *Id.* On each occasion, Plaintiff was not hired by Meta because of his citizenship and the company's preference for H-1B visa holders. *Id.* ¶ 30.

4

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) and 12(f) govern Defendant's Motion to Dismiss and to Strike. "[I]t is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6)." *Topadzhilkyan v. Glendale Police Dep't*, No. CV 10-387, 2010 WL 11459912, at *2 (C.D. Cal. Apr. 2, 2010). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the  grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550  U.S. at 545). When evaluating Rule 12 motions that challenge the pleadings, "(1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader." 5B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1357 & n.11 (3d ed. 2007); *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987) ("On a motion to dismiss for failure to state a claim, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."). "Any existing ambiguities must be resolved in favor of the pleadings." *Heldt v. Tata Consultancy Servs., Ltd.*, 132 F. Supp. 3d 1185, 1189 (N.D. Cal. 2015) (citing *Walling v. Beverly Enters.,* 476 F.2d 393, 396 (9th Cir. 1973)).

Under Rule 12(f), a court may strike from a pleading only material that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored and 'should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation.'" *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) (quotation omitted). "'If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion.'" *Id.* (quotation omitted).

## III.   ARGUMENT

Meta's Motion to Dismiss pursuant to Rule 12(b)(6) and Motion to Strike pursuant to Rule 12(f) should be denied in its entirety because: (A) Section 1981 permits citizenship claims brought by both U.S. citizens and foreigners alike and thus, Plaintiff's claim is cognizable under the statute; (B) Plaintiff's allegations support a plausible inference that Meta acted with discriminatory intent when it failed to hire

5

him; (C) Plaintiff is not required to allege "but for" causation when pursuing pattern or practice claims, but has pled such causation regardless; and (D) neither Rule 12(f) nor Rule 11 provides grounds for striking the challenged allegations in Plaintiff's complaint.

**A.      Plaintiff's Claim is Cognizable Under Section 1981.**

Section 1981 applies to citizenship discrimination claims brought by U.S. citizens. *See, e.g.*, *Jimenez v. Servicios Agricolas Mex, Inc.*, 742 F. Supp. 2d 1078, 1086 (D. Ariz. 2010) ("Section 1981 prohibits [citizenship] discrimination against persons of all citizenships and not only non-Americans."). Section 1981 provides that: "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . *as is enjoyed by white citizens*[.]" 42 U.S.C. § 1981(a) (emphasis added). "'The protection of [Section 1981] has been held to extend to aliens as well as to citizens.'" *Sagana v. Tenorio*, 348 F.3d 731, 738 (9th Cir. 2004) (quoting *Graham v. Richardson*, 403 U.S. 365, 377 (1971)).

The only district courts within the Ninth Circuit to address the issue have held that U.S. citizens can bring Section 1981 claims for citizenship discrimination. *See Hernandez v. Siri & Son Farms, Inc.*, No. 6:20-CV-00669, 2021 WL 4999022 (D. Or. Sept. 30, 2021) (denying summary judgment on U.S. citizen plaintiff's Section 1981 citizenship discrimination claim), *report & recommendation adopted*, 2021 WL 4993475 (D. Or. Oct. 27, 2021); *Murillo v. Servicios Agricolas Mex Inc.*, No. CV-07-2581, 2012 WL 1030084, at *11 (D. Ariz. Mar. 27, 2012) ("To prevail on their § 1981 claim, [p]laintiffs . . . must demonstrate . . . that the Defendants intentionally discriminated against them because they are United States citizens."); *Jimenez*, 742 F. Supp. 2d at 1085-87 ("United States Citizens May Bring a Section 1981 Claim for Discrimination on the Basis of Citizenship.") (citing *Thomas v. Rohner-Gehrig & Co.*, 582 F. Supp. 669 (N.D. Ill. 1984); *United States v. Richard Dattner Architects*, 972 F. Supp. 738, 747-48 (S.D.N.Y.1997)). As the *Jimenez* court explained, "Section 1981's plain text, as well as Supreme Court and Ninth Circuit precedent hold that Section 1981 (1) protects 'all persons' against discrimination, (2) applies to U.S. citizens, and (3) protects against so-called 'reverse discrimination.' Therefore, it does not follow that Americans would be unprotected from this type of discrimination, where non-citizens would be afforded this relief." 742 F. Supp. 2d at 1087 (citing *McDonald v. Santa Fe Trail Transp. Co.*,

427 U.S. 273 (1976); *Takahashi v. Fish and Game Comm'n*, 334 U.S. 410, 419 (1948); *Sagana*, 348 F.3d at 738).

In *McDonald*, the Supreme Court held that Section 1981 applies to claims of reverse discrimination. 427 U.S. 273. The *McDonald* Court rejected the argument that the phrase "as is enjoyed by white citizens" limits itself to the protection of non-white persons against discrimination, in part because "the statute explicitly applies to 'All persons', including white persons." *Id.* at 286-88. The Court observed that the phrase "as is enjoyed by white citizens" simply emphasizes the character of the rights being protected. *Id.* (reversing lower courts' dismissal of Section 1981 reverse discrimination claims by white employees). This logic applies equally to reverse discrimination citizenship claims, as "[a]ll persons" includes U.S. citizens. *Jimenez*, 742 F. Supp. 2d at 1086 ("As *McDonald* concluded that the plain language of Section 1981 prohibits discrimination against persons of all races, and not only non-whites, it is axiomatic that, Section 1981 prohibits discrimination against persons of all citizenships and not only non-Americans.").

As the *McDonald* Court found, Section 1981's legislative history clarifies any ambiguity, as the bill "was introduced by Senator Trumbull of Illinois as a 'bill . . . to protect All persons in the United States in their civil rights,'" and "appl[ies] to 'every race and color.'" 427 U.S. at 287 (quoting Cong. Globe, 39th Cong., 1st Sess., 211 (1866)). Senator Trumbull, the bill's author, further explained, in rebutting an argument that the bill did not prohibit reverse discrimination, that the bill "'applies to white men as well as black men. It declares that all persons in the United States shall be entitled to the same civil rights,'" and that the "'object of [the bill] is to secure equal rights to all the citizens of the country.'" *Id.* at 290 (quoting Cong. Globe at 599). The *McDonald* Court also quoted legislative history that the bill "'regards all men in their civil rights as equal before the law'" and would "'protect every citizen.'" *Id.* at 295 (quoting Cong. Globe at 1833). Thus, prohibiting citizenship claims by Americans would be inconsistent with the legislative history that the bill intended that all persons be treated equally, that reverse discrimination be prohibited, and that every citizen be protected. *Id.* at 290, 295.

Meta relies on a discussion of legislative history cited in *Anderson v. Conboy*, *see* MTD at 9, reflecting that Section 1981 was intended to protect "Chinese aliens" from discrimination. 156 F.3d 167, 173-74 (2d Cir. 1998) ("The immediate purpose of Section 16 was to alleviate the plight of Chinese

immigrants . . . ."). But the immediate purpose of the bill is distinct from the broad language and scope of the bill. In *McDonald*, for example, the Court held that Section 1981 applied to all races, not just African-Americans, the protection of whom was the immediate purpose of the racial protections in the bill. 427 U.S. at 289 (distinguishing "immediate impetus for the bill" of protecting African-Americans from the "scope of the bill" and its "broad language").

Moreover, interpreting Section 1981 to allow citizenship discrimination claims by aliens but not U.S. citizens would be inconsistent with the principle of equality before the law, and would allow displacement of and unfair treatment of American workers, and growing resentment against aliens. *See* K. Geisler, *Fissures in the Valley: Searching for a Remedy for U.S. Tech Workers Indirectly Displaced by H-1B Visa Outsourcing Firms*, 95 Wash. U. L. Rev. 465, 467 & n.17, 482, 498-99 (2017) (discussing "unfair displacement of U.S. workers" by H-1B visa workers who have been exploited and underpaid, and advocating for the application of Section 1981 to prevent citizenship discrimination against U.S. citizens in favor of H-1B visa workers); Naomi Schoenbaum, *The Case for Symmetry in Antidiscrimination Law*, 2017 WIS. L. REV. 69, 71-75 (2017) (explaining the value of prohibiting both discrimination and reverse discrimination alike).

Meta argues that Section 1981 only prohibits "alienage" discrimination, and does not extend to citizenship discrimination against U.S. citizens. MTD at 6-7. But as the *Jimenez* court found, "[t]he cases cited by Defendants are unpersuasive, because like Defendants they base their analysis on the word 'alienage' which is nowhere in the statute," unlike "citizens." 742 F. Supp. 2d at 1086 (distinguishing, *e.g.*, *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir. 1986)). In *Chaiffetz*, which is cited by Meta, the plaintiff sought to assert a claim of reverse discrimination "on the basis of alienage." 798 F.2d at 735. The court found that discrimination against Americans "can never be discrimination based on *alienage*," but the court never considered whether Section 1981 applies to discrimination based on *citizenship*. *Id.*

In making its Section 1981 alienage argument, Meta relies exclusively on out-of-circuit cases, which are not controlling. *See, e.g.*, *Meyenhofer v. Larsen & Toubro Infotech Ltd.*, 503 F. Supp. 3d 39, 49-50 (S.D.N.Y. 2020) (declining to rely on "out of Circuit decision" on applicability of Section 1981 to citizenship claims of U.S. citizens). Further, the cases cited by Meta are not on point, or are otherwise

8

unpersuasive. Meta cites *Jatoi v. Hurst-Euless-Bedford Hospital Authority*, in which the plaintiff asserted a Section 1981 "alienage" claim where he "consider[ed] himself an East Indian." 807 F.2d 1214, 1217, 1219 (5th Cir. 1987). The court dismissed the alienage claim "because [plaintiff] is a [naturalized] United States citizen," inconsistent with his alienage claim as an East Indian. *Id.* Meta also relies on *Tomason v. Stanley*, in which the plaintiff "plead only national origin discrimination," made only "a conclusory allegation [of alienage discrimination] that the Court cannot consider in deciding a motion to dismiss," and in which the court relied in dicta regarding the alienage claim exclusively on *Chaiffetz*, which, as discussed above, only addressed alienage and not citizenship discrimination. No. 6:13-CV-42, 2013 WL 5652040, at *3-4 (S.D. Ga. Oct. 16, 2013). Finally, in *Maack v. Wyckoff Heights Medical Center*, the court found: "Plaintiff has not properly alleged [an alienage] claim" where the complaint lacked factual support for the claim; plaintiff was a naturalized U.S. citizen alleging that *natural born U.S. citizens* received preferential treatment over *naturalized citizens*; and the plaintiff had failed to cite any precedent "in this [Second] Circuit" for allowing a Section 1981 citizenship claim where the claim related not to citizenship status but to whether natural born citizens were favored over naturalized citizens. No. 15 CIV. 3951 ER, 2016 WL 3509338, at *14-16 (S.D.N.Y. June 21, 2016) (dismissing Section 1981 claim "without prejudice").

Meta also argues that Plaintiff's citizenship discrimination claim "amounts to nothing more than alleged national origin discrimination." MTD at 8. But even if there may be some overlap between citizenship and national origin claims, citizenship claims are clearly permitted under Section 1981. *Sagana*, 348 F.3d at 738; *Jimenez*, 742 F. Supp. 2d at 1087. Moreover, Plaintiff's citizenship discrimination claim is distinct from a national origin claim, as he alleges that Meta favored non-citizen visa workers, e.g., Indian H-1B visa workers, over workers of, e.g., Indian national origin who were U.S. citizens, such that membership in the favored class is dependent on citizenship, not national origin. *See* FAC ¶ 31 (Dkt. 10) (defining class membership based on visa status, not national origin); *Hernandez*, 2021 WL 4999022, at *7 ("The fact that status as a 'U.S. citizen' can be invoked for both a U.S. citizen who claims [Section 1981] discrimination based on citizenship status and a U.S. citizen who claims discrimination based on national origin does not automatically convert the former into a national origin claim.")

**B.**    <u>**Plaintiff's Allegations Create a Plausible Inference of Discriminatory Intent.**</u>

Meta argues that Plaintiff's Section 1981 claim fails because Plaintiff purportedly "alleges no facts supporting a plausible inference that Meta acted with discriminatory motivation." MTD at 9. But Plaintiff alleges a number of facts that would support an inference of intentional discrimination, including: (1) that Meta engages in a pattern or practice of discriminating against individuals who are not visa holders in its hiring and staffing decisions; (2) that Meta prefers to hire visa holders because they're less expensive and it can pay them less than U.S. citizens such as Plaintiff; (3) that Meta's U.S. workforce is comprised of 15% or more H-1B visa holders, while H-1B workers make up just a fraction of the U.S. workforce; (4) that Meta's H-1B visa dependency has continued to increase during the class period; (5) that the DOJ found reasonable cause to believe Meta engaged in a pattern or practice of similar, citizenship-based discrimination in its PERM hiring; (6) that Meta knew Plaintiff was a naturalized U.S. citizen; (7) that despite being well qualified for the PLM-roles he applied to with Meta, and receiving positive interview feedback, Plaintiff was denied employment on more than four occasions by Meta; and (8) that Plaintiff "would have been hired absent Facebook's systematic preference for visa holders in hiring for certain U.S. positions." FAC ¶¶ 2-3, 13-15, 17-30, 42 (Dkt. 10).[5]

"[D]iscriminatory intent may be inferred upon . . . a showing" of a "'systemwide pattern or practice' of discrimination such that the discrimination is 'the regular rather than the unusual practice.'" *Brown v. Nucor Corp.*, 785 F.3d 895, 914 (4th Cir. 2015) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 336 (1977)); *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)) (intentional discrimination is inferred when "a clear pattern, unexplainable on grounds other than race, emerges"). Here, Plaintiff has alleged a pattern or practice of discrimination, which alone is sufficient to satisfy the pleading requirement for discriminatory intent. *Brown*, 785 F.3d at 914.  Specifically, Plaintiff alleges a pattern or practice claim on behalf of himself and a class of non-visa holding applicants pursuant to the *Teamsters* two-phase framework. FAC ¶¶ 3, 31, 40-44 (Dkt. 10). Under *Teamsters*, a rebuttable inference of discrimination is adjudicated in Phase I and individual damages and defenses are reserved for

---

[5] Unlike the plaintiff in *Bibi v. VxL Enters., LLC*, 2021 WL 5998439, at *5 (N.D. Cal. Dec. 20, 2021) (cited by Meta), Plaintiff's allegations go well beyond merely "alleg[ing] only that he applied for jobs with defendant but was not hired." MTD at 12.

1    Phase II. 431 U.S. 360-62. In Phase I, Plaintiff has the burden to prove that "[citizenship] discrimination

2    was [Meta's] standard operating procedure[,] the regular rather than the unusual practice." *Id.* at 336, 361

3    n.46. If Plaintiff prevails in Phase I by establishing a pattern or practice of discrimination in hiring, the

4    defendant becomes a "proved wrongdoer," and "an inference [attaches] that any particular employment

5    decision, during the period in which the discriminatory policy was in force, was made in pursuit of that

6    policy." *Id.* at 359 n.45, 362. In Phase II, Plaintiff and each class member "need only show that [they] . . .

7    unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination." *Id.* at

8    362. The burden then shifts to the defendant employer "to demonstrate that the individual applicant was

9    denied an employment opportunity for lawful reasons." *Id.*

10        Because the pleading requirements mirror the specific elements that Plaintiff will ultimately have

11   the burden to prove at trial,[6] Plaintiff need not allege purposeful discrimination by Meta separate from the

12   allegation "that the discrimination was the 'Company's standard operating procedure[,] the regular rather

13   than the unusual practice'" and that he applied to, and was denied a role with Meta. *EEOC v. Gen. Tel. Co.

14   of Nw., Inc.*, 599 F.2d 322, 332 (9th Cir. 1979) (*quoting Teamsters*, 431 U.S. at 336); *see also Richardson

15   v. City of N.Y.*, No. 17-CV-9447, 2018 WL 4682224, at *5 (S.D.N.Y. Sept. 28, 2018) ("To assert

16   a pattern  or practice that violates Section 1981, a plaintiff must plausibly allege that intentional 'racial

17   discrimination was the [defendant's] standard operating procedure[,] the regular rather than the unusual

18   practice, and that the discrimination was directed at a class of victims.'" (quotation omitted)). Here, Plaintiff

19   has sufficiently alleged that Meta engaged in a pattern and practice of intentional citizenship discrimination

20   against non-visa holders who applied to certain positions with or within Meta. *See* FAC ¶¶ 2-3, 13-21, 42.

21   (Dkt. 10). Plaintiff has also alleged that he suffered an adverse employment action (i.e., he was not hired

22   on more than four occasions) due to Meta's pattern and practice of discrimination. *Id.* ¶¶ 23-30. Accepting

23   Plaintiff's allegations as true, and construing them in the light most favorable to Plaintiff, Plaintiff has

24   established the elements necessary to prevail at both the Phase I and Phase II *Teamsters* trial. *Teamsters,*

25   431 U.S. at 362.

---

26

27   [6] *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,* 140 S.Ct. 1009, 1014 (2020) ("to
     determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the
28   plaintiff must prove in the trial at its end").

The allegation of statistical disparities in the Amended Complaint also satisfies the pleading requirement for discriminatory intent. FAC ¶ 15 (Dkt. 10). While Meta acknowledges that Plaintiff's complaint relies partly on statistical evidence – that Meta's U.S. workforce is comprised of at least 15% H-1B visa workers, in contrast to well under 1% of the U.S. labor market[7] – Meta argues that statistics alone cannot create an inference of discriminatory intent and "say nothing" about any discriminatory intent towards Plaintiff. MTD at 11. But as the Ninth Circuit has repeatedly held, statistics can be used as evidence of discriminatory motive and intent in both individual and pattern or practice cases. *See Obrey v. Johnson*, 400 F.3d 691, 694, 698 (9th Cir. 2005) (pattern or practice evidence, including statistical data and anecdotal evidence of past discrimination, relevant in individual case to create an inference of discriminatory motive); *Diaz v. Am. Tel. & Tel*., 752 F.2d 1356, 1363 (9th Cir. 1985) (allowing individual to use statistical information to support discrimination claim because the purpose of such information is "to provide otherwise unavailable indications of an employer's conscious or unconscious motives"); *Martinez v. Oakland Scavenger Co.*, 680 F. Supp. 1377, 1394 (N.D. Cal. 1987) ("In a class pattern or practice claim . . . [t]he requisite discriminatory intent may be shown by statistical . . . evidence.").

In fact, statistical evidence alone can be sufficient to establish a prima facie case of a pattern or practice of intentional discrimination. *Slaight v. Tata Consultancy Servs., Ltd.*, 842 F. App'x 66, 68 (9th Cir. 2021) ("It would have been error for [jury] instructions to state that statistics alone could *not* be sufficient to satisfy the plaintiffs' burden as to intentional discrimination."); *Hazelwood Sch. Dist. v.*

---

[7] *Id.* ¶ 2 n.2 ("As of September 2019, there were approximately 583,420 H-1B visa holders in the United States."); *Id.* ¶ 15; Employment in the United States from 2013 to 2023, STATISTA (last accessed Sept. 5, 2022), available at https://www.statista.com/statistics/269959/employment-in-the-united-states/ (reporting total employment in the U.S. of 157.53 million in 2019); Daniel Costa & Jennifer Rosenbaum, *Temporary foreign workers by the numbers* (Mar. 17, 2017), *available at* https://www.epi.org/publication/temporary-foreign-workers-by-the-numbers-new-estimates-by-visa-classification/ (finding that nonimmigrant visa workers constitute "approximately . . . 1 percent of the U.S. labor force," with H-1B visa workers comprising approximately one-third of nonimmigrant visa workers). While the specific number of H-1B visa workers as a percentage of the U.S. workforce is not made explicit in the FAC, the FAC cites the total number of H-1B visa holders in the United States, FAC ¶ 2 n.2 (Dkt. 10), from which the percentage can be derived. Moreover, "[s]pecific facts are not necessary," and the FAC "give[s] the defendant fair notice" that the claim rests partly on statistical evidence. *Erickson*, 551 U.S. at 94.

*United States*, 433 U.S. 299, 307-08 (1977) ("[w]here gross statistical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of [intentional] discrimination.") (citing *Teamsters*, 431 U.S. at 339); *Beck v. Boeing Co.*, 60 F. App'x 38, 39 (9th Cir. 2003) (holding that proof of prima facie case of employment discrimination "may be done through statistics alone").[8] Moreover, "summary judgment is patently inappropriate when a plaintiff needs statistical data to substantiate the inference of discrimination and has been denied the opportunity to discover this data." *Diaz*, 752 F.2d at 1362-63. Here, Plaintiff plausibly alleges a statistical disparity, and this statistical disparity alone satisfies Plaintiff's pleading requirement. *Hazelwood*, 433 U.S. at 307-08; *Slaight*, 842 F. App'x at 68; *Diaz*, 752 F.2d at 1362-63.

Ignoring that Plaintiff properly plead intent through his pattern or practice allegations and his allegations of statistical disparities, Meta argues that Plaintiff must specifically allege an "intent to discriminate" based on citizenship including, for example, that other similarly situated visa holders were treated more favorably than him and that less qualified visa holders were ultimately hired for the positions to which he applied. MTD at 10-13. But those are only elements of a *prima facie* case for individual claims of discrimination under the *McDonnell Douglas* framework, not class claims under the *Teamsters* framework. *See Hawn v. Executive Jet Mgmt.*, 615 F.3d 1151, 1158 (9th Cir. 2010) (noting "[t]he concept of 'similarly situated' [applicants] may be relevant to both the first and third steps of the *McDonnell Douglas* framework," i.e., plaintiff's "prima facie case and proof of pretext[,] . . . inquiries [that] constitute distinct stages of the *McDonnell Douglas* burden-shifting analysis"). Here, Plaintiff would *never* have the burden to prove these facts to obtain relief under the *Teamsters* pattern or practice framework because once Plaintiff proves that Meta engaged in a general pattern or practice of discrimination in Phase I, he will only need to prove that he "unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination" in Phase II. *Teamsters*, 431 U.S. at 362. Accordingly, Plaintiff need not allege that he was treated less favorably than less qualified visa holders. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511-

---

[8] Meta relies on *Wal-Mart Stores, Inc. v. Dukes* for its argument on the purported insufficiency of statistical evidence, but there, statistical evidence was found insufficient to satisfy commonality on class certification, but only because the challenged policy was one of providing discretion to local supervisors over employment decisions, which the court described as "a policy against having uniform employment practices." 564 U.S. 338, 355 (2011); *see also id.* at 371 n.4 ("*Teamsters*, the Court acknowledges, instructs that statistical evidence alone may suffice") (Ginsburg, J., dissenting).

12 (2002) ("It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits.").[9]

Plaintiff's factual allegations supporting an inference of intentional discrimination also includes the allegation that the DOJ "'found reasonable cause to believe that [Meta] had engaged in a pattern or practice of unfair immigration-related employment practices violating 8 U.S.C. § 1324b(a)(1),' which prohibits discrimination based on an individual's citizenship status." FAC ¶ 17 (Dkt. 10) (quoting DOJ's complaint). Meta disputes the relevance of the investigation and findings, making two flawed arguments. MTD at 10. First, Meta argues that the DOJ's investigation – which extended "to *at least* September 18, 2019," predated Plaintiff's applications to Meta, which began in May 2020. FAC ¶¶ 18, 24 (Dkt. 10) (emphasis added). But Plaintiff alleges that Meta's citizenship discrimination and dependency on visa holders is continuous and ongoing, and would therefore have infected the company's hiring practices beyond the time frame specified in the DOJ's complaint. *Id.* at 1 & ¶¶ 15, 42. Second, Meta argues that the DOJ's investigation of Meta's citizenship discrimination is irrelevant here because it involved hiring for PERM positions. But the DOJ's investigation is relevant and probative as it targeted the *same type* of discrimination at issue here (discrimination based on citizenship / visa status), and evidences the company's preference for visa holders.[10] *Cf. Berry v. Oswalt*, 143 F.3d 1127, 1133 (8th Cir. 1998) ("[E]vidence of prior acts of discrimination on the basis, for example, of [citizenship] should normally be freely admitted in cases alleging [citizenship] discrimination in employment.").

---

[9] Meta cites to *Imagineering, Inc. v. Kiewit Pacific Co.*, but there the court recognized that allegations of a scheme to evade minority set aside regulations in government contracting on the basis of race "normally may be adequate to state a claim under section 1981," but failed because the "indirect nature of the injury [made it] difficult for the court to ascertain what amount of damage suffered by the plaintiffs is attributable to just [defendant]'s conduct." 976 F.2d 1303, 1312-13 (9th Cir. 1992).

[10] Even if Plaintiff brought only an individual Section 1981 claim (which he has not), pattern or practice evidence such as the DOJ's investigation would be relevant to his claim. *See Obrey*, 400 F.3d at 697-98 (finding that district court abused discretion in excluding pattern or practice evidence that supported individual plaintiff's "pattern or practice theory" and noting pattern or practice evidence is relevant "to show that the defendant had a discriminatory motive when it denied his promotion because it had unlawfully rejected other applicants in circumstances similar to his"); *Karp v. CIGNA Healthcare, Inc.*, 882 F. Supp. 2d 199, 212 (D. Mass. 2012) ("[A]n individual plaintiff . . . is normally permitted to show that her employer engaged in a widespread pattern or practice of gender discrimination and that she is a victim of that discrimination.").

Accordingly, Plaintiff has adequately alleged facts supporting an inference of purposeful discrimination.

**C.      Plaintiff Is Not Required to Allege But For Causation When Bringing Pattern Or Practice Claims.**

Meta claims that Plaintiff was required to allege "but-for" causation in his complaint, and failed to do so. MTD at 12-13 (citing *Comcast*, 140 S. Ct. at 1009, 1013, 1018-19). But *Comcast* sets forth the pleading standard for individual claims, and Plaintiff does not have the burden to prove but for causation with respect to his pattern or practice claims in either Phase I or Phase II under *Teamsters*. *See Teamsters*, 431 U.S. at 360 n.46 (during Phase I, "the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking."); *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 863 (3d Cir. 1987) (during Phase II, "the 'but for' burden of persuasion rests properly with the defendant"). On  a motion  to  dismiss, Plaintiff is not required to plead "more facts than [he] may ultimately need to prove [at trial] to succeed on the merits," and accordingly, Plaintiff was not required to allege but for causation here. *Swierkiewicz*, 534 U.S. at 511-12. The cases Meta cites in support of its position all involve *individual* Section 1981 claims where the plaintiff bears the burden of both alleging and proving "but for" causation, which is not the case here. *Williams v. Carson Concrete Corp*., No. 20-5569, No. 2021 WL 1546455, at *4 (E.D. Pa. Apr. 20, 2021) (Section 1981 individual failure-to-hire claim); *Moralez v. Whole Foods Mkt. Cal., Inc.*, No. 14-cv-05022-EMC, 2016 WL 845291, at * 1 (N.D. Cal. Mar. 4, 2016) (Section 1981 claim premised on individual's "unpleasant confrontation with several employees" at a Whole Foods store).[11]

Meta does not dispute that Plaintiff has sufficiently pled his pattern or practice claims, namely, by alleging that Meta engages in a pattern or practice of ongoing citizenship discrimination in its hiring and staffing decisions by favoring visa holders for certain positions in the U.S. and that Plaintiff suffered an adverse employment action (he was not hired) due to Meta's pattern or practice of discrimination. FAC ¶¶ 2-3, 13-30 (Dkt. 10).

---

[11] While *Williams v. Tech Mahindra (Americas.), Inc.*, No. 3:20-cv-04684, 2021 WL 302929, at *7 (D.N.J. Jan. 29, 2021) was a class action in which the Court found that the plaintiff failed to allege "but for" causation, that decision is currently on appeal to the Third Circuit.

And while not required, Plaintiff has sufficiently pled "but for" causation and sufficiently alleged that he was not hired because of his citizenship. For instance, Plaintiff describes Meta's discriminatory scheme in detail, the company's rationale for favoring visa holders, and the DOJ's investigation which found reasonable cause to believe that Meta engaged in a pattern or practice of citizenship / immigration discrimination in its PERM hiring. *Id.* Plaintiff also alleges that he was well qualified for the PLM roles with Meta given his almost twenty years of experience in that field, and that despite receiving positive feedback in his interviews, "[i]n each instance, [Meta] did not hire Mr. Rajaram because of his citizenship." *Id.* ¶¶ 22-23, 25, 30. These factual allegations, accepted as true and viewed in the light most favorable to Plaintiff are sufficient to plead "but for" causation. *See Parks v. Buffalo City Sch. Dist.*, No. 17-CV-631S, 2020 WL 2079320, at *9 (W.D.N.Y. Apr. 30, 2020) (where "[plaintiff] alleges various examples of the allegedly widespread discriminatory practice, including the discrimination that she allegedly suffered[,] [a]t this stage, these allegations are minimally sufficient to defeat [a] motion to dismiss."). These detailed allegations go well beyond those in *Moralez* where "Plaintiff plead[] no facts that demonstrate any of the actions that occurred were related to racial discrimination," 2016 WL 845291, at *2, and in *Williams* where the Court found Plaintiff's allegations to be "boilerplate" and "unsupported by specific facts," 2021 WL 302929, at *7.

### D.    Neither Rule 12(f) Nor Rule 11 Provides Grounds for Striking Plaintiff's Allegations.

Meta moves the Court to strike paragraphs of Plaintiff's First Amended Complaint that reference the DOJ's investigation, findings, complaint, and settlement with Meta, namely paragraphs 2, 13, 17, 18, and 19. MTD at 14. Meta moves to strike these paragraphs in their entirety, *id.*, even though portions of these paragraphs are unrelated to the DOJ investigation. *See, e.g.*, FAC ¶ 2 n.2 (citing statistical evidence not cited in the DOJ Complaint).

Meta moves pursuant to Rule 12(f) (Caption, Notice of Motion (Dkt. #25)), which applies only if material is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Plaintiff's allegations do not meet this standard, and Meta does not even attempt to argue otherwise. *See* MTD at 14-17; *see also Holmes*, 966 F. Supp. 2d at 930 ("Motions to strike are generally disfavored and 'should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation.'" (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal.

2004))); *Mancini v. Ins. Corp. of N.Y.*, No. 07-cv-1750, 2008 WL 11337258, at *2 (S.D. Cal. May 29, 2008) (denying motion to strike allegations regarding other actions involving the defendant from complaint where the "allegations [we]re relevant to the issues of [a] pattern and practice," and were "not scandalous, impertinent, immaterial or redundant").

Meta argues that Plaintiff's complaint is "premised almost entirely on *borrowed allegations*" from the DOJ Complaint and settlement with "*no indication* that Plaintiffs' counsel conducted any independent investigation." MTD at 14 (emphasis added). But paragraphs 2, 17, 18, and 19 describe the DOJ's two-year investigation of Meta, finding of "'reasonable cause to believe that Facebook had engaged in a pattern or practice of unfair immigration-related employment practices,'" complaint, and $14.25 million settlement. FAC ¶¶ 2, 17-19 (Dkt. 10) (quoting DOJ Complaint ¶ 10). These paragraphs do not "borrow[] allegations," but simply describe the DOJ proceedings. MTD at 14. Meta has not disputed the accuracy of Plaintiff's descriptions, or the sufficiency of Plaintiff's investigation into those proceedings. MTD at 15 ("Paragraphs 2, 13, 17, 18, and 19 of the FAC simply recount the DOJ's investigation, Complaint, and Settlement, and cite to the same . . . ."); Low Decl. ¶ 7. Paragraph 2 discusses Meta's preference for hiring visa workers, cites statistical evidence independent of the DOJ investigation, and discusses the fact that Meta can pay visa workers less than citizens (a fact Plaintiff's counsel has extensively researched, including in other litigation related to H-1B visas and work with an industry expert). Low Decl. ¶ 5. Paragraph 2 also identifies the existence of the DOJ lawsuit and settlement  related to Meta's alleged preference for visa workers.  Paragraph 13 makes the uncontroversial allegation that "[h]iring employees increases costs," and further alleges that Meta prefers to hire visa workers for certain positions "[i]n order to reduce costs." FAC ¶ 13 (Dkt. 10). While Plaintiff cites the DOJ Complaint for the latter proposition, it is also supported by, e.g., Plaintiff's statistical evidence of Meta's reliance on visa workers and Plaintiff's investigation into the industry practice of paying visa workers less than U.S. citizens. *Id.* ¶¶ 2, 15; Low Decl. ¶ 6. Thus, none of the challenged paragraphs involve "borrowed allegations" copied from the DOJ complaint or settlement, Plaintiff's claims do not lack independent support, and none are "redundant, immaterial, impertinent, or scandalous."  Fed. R. Civ. P. 12(f).

Instead of arguing that the challenged paragraphs satisfy the standard of the applicable rule – Fed. R. Civ. P. 12(f), Meta argues that the paragraphs should be stricken pursuant to Rule 11. MTD at 14-15,

17. Striking a filing is one of the sanctions available pursuant to Rule 11. Fed. R. Civ. P. 11, advisory cmte. note (1993 amendment) ("The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; . . ."). A Rule 11 motion "must be made separately from any other motion," and "must be served under Rule 5, but it must not be filed or be presented to the court . . . within 21 days after service." Fed. R. Civ. P. 11(c)(2). Here, Meta argues that Plaintiff's counsel failed to conduct any independent investigation of their allegations in violation of Rule 11, but Meta has failed to follow the procedural requirements of Rule 11, as Meta did not file a separate motion and never served a Rule 11 motion on Plaintiff before filing its motion to strike. Low Decl. ¶ 4. In fact, Meta's counsel did not inquire of Plaintiff or his counsel whether they had undertaken any independent investigation related to the allegations in the complaint before publicly accusing Plaintiff's counsel of Rule 11 misconduct. *Id.*; MTD at 14 (arguing only that there is "no indication" in the FAC of any independent investigation). Because Meta failed to follow the mandatory procedural requirements of Rule 11, its request for relief pursuant to Rule 11 should be denied. *See* Fed. R. Civ. P. 11(c)(2); *Kalbers v. U.S. Dep't of Justice*, No. CV 18-8439, 2020 WL 6204565, at *9 (C.D. Cal. Oct. 9, 2020) ("plaintiff's Motion to Strike and for Sanctions can be denied on procedural grounds") (citing Fed. R. Civ. P. 11(c)(2)), *rev'd in part on other grounds*, 22 F.4th 816 (9th Cir. 2021).

Even if the Court were to consider Meta's Rule 11 argument on its merits, the argument fails. Meta argues that Plaintiff violated Rule 11(b)(3) by failing to undertake an "inquiry reasonable under the circumstances [that] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Striking allegations under "'Rule 11 is an extraordinary remedy, one to be exercised with extreme caution.'" *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434-35 (9th Cir. 1996) (quoting *Operating Eng'rs Pension Trust v. A–C Company,* 859 F.2d 1336, 1345 (9th Cir. 1988)); *Metlife Bank, N.A. v. Badostain*, No. 1:10-cv-118, 2010 WL 5559693, at *7 (D. Idaho Dec. 30, 2010) ("[T]he Ninth Circuit repeatedly has stated" that Rule 11 sanctions are only to be awarded "in rare and exceptional cases."). The "extraordinary remedy" of striking the challenged paragraphs for failing to undertake a reasonable inquiry into their factual allegations should be denied for five reasons.

First, most of the challenged material is an undisputedly accurate description of the DOJ investigation, findings, complaint, and settlement. FAC ¶¶ 2, 17-19 (Dkt. 10). Plaintiff's counsel reviewed the published OCAHO decisions and other materials related to the DOJ proceedings (Low Decl. ¶ 7),[12] and Meta does not dispute that Plaintiff adequately investigated those proceedings. MTD at 15. The remaining challenged materials – in paragraphs 2 and 13 – contain allegations supported by evidence independent of the DOJ proceedings. Low Decl. ¶¶ 5-6.

Second, contrary to Meta's argument that Plaintiff's "*only* factual support" regarding Meta's pattern or practice of citizenship discrimination is the DOJ proceedings, Plaintiff's counsel independently investigated the claims by, for example, researching the PERM hiring claims at issue in the DOJ proceedings, analyzing Meta's PERM application figures from 2013 to 2020, discovering the strong correlation of positions for which Meta files H-1B visa applications and PERM applications alike, analyzing statistical evidence of Meta's disproportionate reliance on H-1B visa workers, investigating industry practices and Meta's practices related to reliance on H-1B visa workers, investigating Meta's hiring practices including its use of third-party vendors, investigating the cost-savings rationale for Meta's reliance on H-1B visa holders, analyzing the positions for which Meta prefers to hire and staff H-1B visa holders, investigating the jobs for which Meta most often seeks PERM hires, and analyzing Plaintiff's own experiences applying to Meta. *See, e.g.*, FAC ¶¶ 1-2, 13-16, 20-30 (Dkt. 10); Low Decl. ¶ 3. Accordingly, Plaintiff's counsel's conduct here differs drastically from that in *Christian v. Mattel, Inc.* where counsel "fail[ed] to perform even minimal due diligence," and filed a frivolous copyright infringement claim alleging illogically that a prior-created work infringed a later-created one. 286 F.3d 1118, 1128, 1129 (9th Cir. 2002).

Third, Courts in the Ninth Circuit have repeatedly held that reliance on third party materials to substantiate claims is permissible, so long as those materials are not "the only basis" for the allegations. *In re Connetics Corp. Secs. Litig,*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) (cited by Meta); *In re Cylink Secs. Litig.,* 178 F.Supp.2d 1077, 1083 (N.D. Cal. 2001) ("[T]hese allegations, especially when combined with the other transactions detailed in the SEC complaint, provide strong circumstantial

---

[12] *Available at* https://www.justice.gov/eoir/listing-volume-14-decisions.

evidence"); *In re New Century*, 588 F. Supp. 2d 1206, 1219-21 (C.D. Cal. 2008) (permitting allegations drawn from a Bankruptcy Examiner's Report because "the report only supplements the investigation," and "the allegations are derived from documentary evidence that qualifies as a reliable source"); *Luxul Tech. Inc. v. NectarLux, LLC*, No. 14-CV-03656-LHK, 2015 WL 4692571, at *6 (N.D. Cal. Aug. 6, 2015) ("to the extent that Nectarlux supports its own investigation and knowledge of the Colvin matter with the Colvin complaint, such reliance is appropriate as an attorney 'may rely in part on other sources, such as a newspaper article, [ ] as part of his or her investigation into the facts.'" (quoting *In re Connetics*, 542 F. Supp. 2d at 1005)).   Reliance on a complaint brought by a government enforcement agency and a related settlement to provide context for a plaintiff's claims are especially appropriate. *Gray v. Bayer Corp.*, No. 08-4716, 2010 WL 1375329, at *3 (D.N.J. Mar. 31, 2010) ("[T]he FTC is the type of organization specifically tasked with investigating and prosecuting the very claims alleged by the Plaintiff in this matter. Defendant cites to no binding legal authority for the proposition that a party may not rely on relevant action taken by the FTC to provide proper context for its own claims . . . or that a party's decision to do so violates Rule 11(b)."). Here, Plaintiff's citations to the DOJ investigation, complaint, findings, and settlement for citizenship discrimination support Plaintiff's pattern or practice allegations and corroborate his experiences of being denied employment on at least four occasions by Meta.

The two cases that Meta cites in support of its motion to strike are distinguishable because, unlike here, (1) the allegations at issue were the *only* basis for the allegations in the complaints; (2) the plaintiffs copied the allegations verbatim rather than describing the other proceedings and findings; and (3) plaintiffs' counsel did not independently investigate the allegations as Plaintiff's counsel did here. *See In re Connetics*, 542 F. Supp. 2d at 1005-06 (striking allegations copied verbatim from an SEC complaint where plaintiffs did not conduct any independent investigation and did not inform the court of any other sources of information on which they relied); *Fraker v. Bayer Corp.*, No. CVF08-1564, 2009 WL 5865687, at *5-6 (E.D. Cal. Oct. 6, 2009) (striking portions of the complaint that were "lifted" directly from documents from proceedings in other courts without any independent investigation of counsel).

Fourth, Meta argues that Rule 11 requires that that Plaintiff's complaint only contain "validated factual contentions." MTD at 17. But Rule 11 only requires an "inquiry reasonable under the

circumstances" that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). In denying motions to strike, courts have regularly upheld the inclusion of information and allegations in complaints that were not independently verified. *See Sec. & Exch. Comm'n v. Strong Inv. Mgmt.*, No. 8:18-CV-00293, 2018 WL 8731559, at *5 (C.D. Cal. Aug. 9, 2018) (holding that "even if the Court found that the SEC did not specifically verify the findings of Broker 1, as part of its investigation, these allegations are nonetheless properly included because they 'corroborate' the rest") (citation omitted); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.,* 851 F. Supp. 2d 746, 768 n.24 (S.D.N.Y. 2012) (rejecting argument "that any portion of a pleading that relies on unadjudicated allegations in another complaint is immaterial under Rule 12(f)…Neither Circuit precedent nor logic supports such an absolute rule"). And even where a plaintiff's counsel has failed to conduct a reasonable inquiry into the allegations (unlike here), the Ninth Circuit has held that striking said material under Rule 11 is only proper if the filing is "*both* baseless *and* made without a reasonable and competent inquiry." *Luxul Tech. Inc.*, 2016 WL 3345464, at *4; *GN Resound S/A v. Callpod, Inc*., No. C 11-04673, 2013 WL 5443046, at *4 (N.D. Cal. Sept. 30, 2013) (refusing to grant Rule 11 sanctions where "Defendant[] . . . ha[d] not clearly shown that Plaintiff filed a 'frivolous' pleading, i.e., one that is legally or factually baseless from an objective perspective and made without a reasonable and competent inquiry"). "[A]n attorney cannot 'be sanctioned for a complaint which is well-founded, solely because she failed to conduct a reasonable inquiry.'" *Luxul Tech. Inc.*, 2016 WL 3345464, at *4 (quoting *In re Keegan*, 78 F.3d at 434).

Finally, the Ninth Circuit has emphasized that Rule 11 "calls for an intensely fact-bound inquiry, and for this kind of inquiry, 'bright lines' are not appropriate." *Townsend v. Holman Consulting Corp*., 929 F.2d 1358, 1364 (9th Cir. 1990). As such, courts have frequently taken discovery concerns and the nature of the action into consideration when analyzing a Rule 11 motion to strike. *Id.* ("If the relevant facts are in control of the opposing party, more leeway must be given to make allegations in the early stages of litigation that may not be well-grounded"); *In re Connetics Corp. Sec. Litig*., No. 07-02940 SI, 2008 WL 3842938, at *4 (N.D. Cal. Aug. 14, 2008) (denying motions to strike where plaintiffs indicated allegations are "based upon information and belief," and that information underlying certain allegations drawn from the SEC complaint would be impossible to acquire absent discovery); *Smith v. Our Lady of the Lake Hosp., Inc*., 960 F.2d 439, 446-47 (5th Cir. 1992) (noting Rule 11 "must not bar the courthouse

21

door to people who have some support for a complaint but need discovery to prove their case"); *see also In re Bear Stearns,* 851 F. Supp. 2d at 768 n.24 (complaints replete with detailed factual information are better for borrowing than others). Here, establishing the extent of Meta's discriminatory scheme requires discovery since relevant facts are largely in Meta's control, and accordingly, Plaintiff should be afforded "more leeway . . . to make allegations." *Townsend*, 929 F.2d at 1364.  In light of such leeway, and given that Rule 11 provides an extraordinary remedy, Plaintiff's inquiry into his factual allegations were more than "reasonable under the circumstances," and Meta's motion to strike should be denied. Fed. R. Civ. P. 11(b)(3).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Meta's Motion to Dismiss and to Strike. To the extent the Court grants Meta's Motion, Plaintiff requests dismissal without prejudice and with leave to amend. *See London v. City of Redlands*, No. EDCV 17-185, 2017 WL 11635006, at *2 (C.D. Cal. May 1, 2017) ("Generally, the Ninth Circuit has a liberal policy favoring amendments and,  thus, leave to amend should  be freely granted."); *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.").

DATED: September 12, 2022                Respectfully submitted,

By: /s/Daniel Low

Daniel Low, SBN 218387
KOTCHEN & LOW LLP
1918 New Hampshire Avenue NW
Washington, DC 20009
Telephone: (202) 471-1995
Email: dlow@kotchen.com;

*Attorney for Plaintiff*

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that a true and correct copy of the foregoing was served on all counsel of record

3    by electronic service through the Clerk of the Court's CM/ECF filing system.

4

5

6    DATED: September 12, 2022                    By: /s/Daniel Low
                                                  Daniel Low

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28