UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| PURUSHOTHAMAN RAJARAM,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 22-cv-02920-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 25 |

### INTRODUCTION

This is a putative class action against Meta Platforms (known as Facebook until June 2022). The named plaintiff Purushothaman Rajaram is a naturalized U.S. citizen who applied for different jobs at Facebook in Menlo Park, California, and Austin, Texas, but was not hired, allegedly because Facebook hires H-1B visa holders because it can pay them less than U.S. citizens. (The H-1B program allows U.S. employers to temporarily hire qualified foreign workers for certain specialty occupations when the employers cannot otherwise obtain the needed skills from workers authorized to work in the U.S. 8 C.F.R. § 214.2(h)(1)(ii)(B).) The plaintiff claims that this hiring practice discriminates against U.S. citizens in violation of 42 U.S.C. § 1981(a), which provides

that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."[1]

Facebook moved to dismiss the claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), on the grounds that U.S. citizens are not a protected class under § 1981 and the plaintiff did not plausibly allege intentional discrimination or that he would have been hired but for discrimination. Facebook also moved to strike allegations in the complaint under Rule 12(f) on the ground that the plaintiff copied them from a complaint in an administrative proceeding brought by the U.S. Department of Justice without independently verifying the lifted allegations.[2]

The court grants the motion. The weight of authority supports the conclusion that a U.S. citizen cannot bring a claim for citizenship or alienage discrimination under § 1981.

## STATEMENT

Facebook is a "technology conglomerate" incorporated in Delaware and headquartered in Menlo Park. It has popular products, including Facebook, Instagram, Messenger, and WhatsApp. It employs 60,000 people worldwide, including (as of 2019) roughly 35,000 in the U.S.[3] For certain U.S.-based positions, it allegedly prefers to hire H-1B visa holders because it can pay them less than U.S. citizens for the same work.[4] The plaintiff, a naturalized U.S. citizen who lives in Pennsylvania, applied for different jobs with Facebook, which did not hire him and in one case instead hired an H-1B visa holder.[5] In this putative class action, he represents a class of non-visa holders who applied for, and were denied, employment at Facebook as software engineers,

---

[1] First Am. Compl. (FAC) – ECF No. 10. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 25.

[3] FAC – ECF No. 10 at 1–2 (¶ 1), 2–3 (¶ 6).

[4] Id. at 2 (¶¶ 2–3), 4 (¶¶ 13–14).

[5] Id. at 2 (¶ 4), 7 (¶ 23), 9 (¶ 30).

research scientists, data scientists, data engineers, engineering managers, and product-lifestyle managers.[6]

The complaint describes Facebook's alleged hiring practices regarding H-1B visa holders and its failure to hire the plaintiff.

### 1. Hiring Practices

Like other similar U.S. employers, when Facebook wants to staff a position in the U.S., it considers three categories of applicants: (1) U.S. citizens, (2) lawful permanent residents (meaning, green-card holders), and (3) foreign workers who require a work visa (typically an H-1B visa).[7] Generally, H-1B visas allow foreign workers to work in the U.S. in specialty occupations, are limited in number (65,000 awarded through a lottery process and an additional 20,000 given to persons with advanced degrees), and are temporary (generally up to six years, with certain exceptions). The program aids employers who can hire foreign workers for these specialty jobs when they cannot otherwise find workers who have the requisite skills and are authorized to work in the U.S. Employers must pay H-1B visa holders at least as much as other individuals qualified for the jobs.[8] 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184; 8 C.F.R. § 214.2(h)(1)(ii)(B); 20 C.F.R. § 655.731(a).

Facebook allegedly hires H-1B visa holders instead of U.S. citizens because it can pay them less.[9] H-1B visa holders — about 580,000 total — "make up just a fraction of the [U.S.] labor market."[10] But Facebook is "an H-1B visa dependent employer," which means that fifteen percent or more of its U.S. workforce has an H-1B visa. It hires H-1B visa holders through its own recruiters and third-party vendors, primarily as software engineers but also as research scientists,

---

[6] *Id.* at 9 (¶ 31).

[7] *Id.* at 2 (¶ 2).

[8] *Id.* at 4 (¶ 14) (citing 8 C.F.R. § 214.2(h)(1)(ii)(B), i(l) & 20 C.F.R. § 655.731(a)).

[9] *Id.* at 2 (¶ 2).

[10] *Id.* at 2 (¶ 2 & n.2) (citing Priyanka Sangani, *U.S. has just over 580,000 H-1B holders, says USCIS*, The Econ. Times (June 29, 2020), https://bit.ly/3txmo75).

data scientists, data engineers, and engineering managers. "[A]s Facebook's U.S. workforce continues to grow, so does its reliance on H-1B visa workers, as indicated by the increased number of H-1B visa approvals[:]

| Year | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|---|---|---|---|
| H-1B Approvals | 412 | 527 | 894 | 1,107 | 1,566 | 2,467 | 3,552 | 4,408 | 5,100[11] |

The plaintiff cites a December 2020 administrative proceeding under 8 U.S.C. § 1324b brought by the U.S. Department of Justice — following an investigation — against Facebook for intentionally discriminating against U.S. workers "because of their citizenship or immigration status by failing to recruit, consider, or hire [them] for permanent positions that it earmarks for the company's visa holders." From at least January 1, 2018, to at least September 18, 2019, Facebook's practice was to fill certain permanent positions only with existing Facebook visa holders seeking permanent positions within Facebook and lawful-permanent residency. "Facebook took active steps to discourage U.S. workers from applying to the positions reserved for its visa holders, including by failing to advertise the open positions on its website, refusing to accept online applications for the roles, and requiring all interested candidates to mail in copies of their applications." By this practice, "Facebook was able to ensure that its temporary visa holders secured permanent positions through the permanent labor certification process, allowing them to remain in the U.S. beyond the 6-year period afforded by their H-1B visas."[12] The parties settled the case: Facebook did not admit liability, paid a civil penalty of $4.75 million, paid $9.5 million into a settlement fund for potential victims, and agreed to change its recruitment process, including by changing how it posted jobs and accepted applications and agreeing to reject U.S. workers for the relevant positions only "for lawful, job-related reasons."[13]

---

[11] *Id.* at 4–5 (¶¶ 15–16 & n.4) (citing *H-1B Employer Data Hub Files*, U.S. Citizenship & Immig. Servs., http://www.bitly/2OpEyr2).

[12] *Id.* at 5–6 (¶¶ 17–18) (citing Compl., *United States v. Facebook, Inc.*, OCAHO Case No. 2021B00007, at 1–2 (¶¶ 2–3), 3 (¶¶ 9–10), 4 (¶ 17), 9 (¶ 42), 10 (¶¶ 48–49), https://bit.ly/3rMJzbF).

[13] *Id.* at 6–7 (¶ 19) (citing Settlement Agreement at 2–3, https://bit.ly/3nxZifd).

**2. Failure to Hire the Plaintiff**

The plaintiff has a Bachelor of Engineering degree from Madras University and a Diploma in Mechanical Engineering from the Directorate of Technical Education, both in Chennai, India. He is "an experienced and highly skilled information technology professional" with almost twenty years of experience in solution architecting and delivering enterprise product-lifestyle-management software solutions to Fortune 500 corporations. His technical skills include "[product-lifestyle-management] administration, implementation, integration, and support." Since June 2014, he has worked as an independent product-lifestyle-management technical consultant for "aerospace, energy, and technology customers (among others)."[14]

The plaintiff "was considered for employment with Facebook on more than four occasions [starting in May 2020], but Facebook failed to hire him each time because of the company's systematic and continuous discriminatory scheme" of hiring visa holders.[15]

First, in May 2020, Facebook's third-party vendor Infosys contacted the plaintiff via WhatsApp for a potential product-lifestyle-management role. The plaintiff submitted his resume, which — like his LinkedIn profile — listed his citizenship status as a naturalized U.S. citizen.[16] Three Infosys employees interviewed him later in May and gave him positive feedback, telling him that he was the "right guy" and "perfect" for the job.[17] On June 1, 2020, Infosys's client partner for Facebook asked whether the plaintiff "would be available in approximately thirty minutes" to interview with a Facebook employee for the role. Later that evening, he interviewed with someone at Facebook. He "understands" that the Facebook interviewer was "working for Facebook in the U.S. on an H-1B visa." The interviewer "was a junior employee, which was evidenced by his questioning." Facebook did not hire the plaintiff, "[d]espite [his] performing well in his interviews and being well-qualified for the role."[18]

---

[14] *Id.* at 2 (¶ 4), 7 (¶ 22).
[15] *Id.* at 7–8 (¶¶ 23–24), 9 (¶ 30).
[16] *Id.* at 8 (¶ 24).
[17] *Id.* (¶ 25).
[18] *Id.* (¶ 26).

ORDER – No. 22-cv-02920-LB                5

Second, on June 19, 2020, after the plaintiff sent him a resume (again reflecting his citizenship), a product-lifestyle-management analyst at Facebook "referred [the plaintiff] for a full-time position with the company." On June 23, a Facebook technical sourcer who worked in Menlo Park contacted the plaintiff, and on June 29, they discussed the position for forty-five minutes to an hour. The plaintiff described his experience, and the sourcer said that Facebook was "very interested in [his] candidacy" and that the sourcer would "present him to the team that was hiring for the role." On July 6, 2020, the sourcer told the plaintiff that "the team decided not to move forward with the next steps." Facebook did not hire him for the product-lifestyle-management analyst job and provided no further explanation for its rejection of the plaintiff's candidacy. "On information and belief, Facebook staffed the role with an H-1B visa holder."[19]

Third, on March 10 and 22, 2022, the plaintiff applied to be an application manager, which is a product-lifestyle-management remote position, on Facebook's "career website" and again submitted his resume showing that he is a U.S. citizen. "Despite being well-qualified for the roles," Facebook did not respond to his applications.[20]

Fourth, "over the past few years," the plaintiff applied online for several project-lifestyle-management positions: manager, project manager, and architect. Facebook did not respond to his applications.[21]

### 3. Relevant Procedural History

The plaintiff claims discrimination on the basis of his U.S. citizenship, in violation of 42 U.S.C. § 1981. The claim is based on Facebook's alleged "pattern and practice of discriminating against individuals who are not visa holders" by "(a) knowingly and intentionally favoring individuals with visas in job placement (*i.e.*, hiring/staffing) decisions, and (b) knowingly and intentionally disfavoring individuals who are not visa holders (including [the] [p]laintiff) in job

---

[19] *Id.* at 8–9 (¶ 27).
[20] *Id.* at 9 (¶ 28).
[21] *Id.* (¶ 29).

placement (*i.e.*, hiring/staffing) decisions."[22] It is undisputed that the court has subject-matter jurisdiction. 28 U.S.C. §§ 1331–1132 & 42 U.S.C. § 1981(a). All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[23] The court held a hearing on November 10, 2022.

## ANALYSIS

Facebook moved to dismiss the § 1981 discrimination claim under Rule 12(b)(6) on the grounds that U.S. citizens are not a protected class under § 1981 and the plaintiff did not plausibly allege intentional discrimination or that he would have been hired but for discrimination. Facebook also moved to strike the allegations in the complaint about the U.S. DOJ case under Rule 12(f) on the ground that the plaintiff copied the allegations from the administrative complaint and did not verify them independently.[24] The court grants the motion to dismiss because the weight of authority supports the conclusion that U.S. citizens are not a protected class under § 1981. The court thus does not reach Facebook's other arguments.

1.  **Legal Standard**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). If a court dismisses a complaint because it lacks sufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If the legal theory is not cognizable, the court should give leave to amend if the

---

[22] *Id.* at 11 (¶¶ 40–44).
[23] Consents – ECF Nos. 8, 15.
[24] Mot. – ECF No. 25 at 12–23.

ORDER – No. 22-cv-02920-LB           7

plaintiff could "articulate a cognizable legal theory if given the opportunity." *Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th. Cir. 2017).

Section 1981 provides in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Generally, § 1981 prohibits discrimination based on race or ethnicity, but not gender, sexual orientation, religion, age, disability, or national origin. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1123 (9th Cir. 2008); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004); *Sagana v. Tenorio*, 384 F.3d 731, 738 (9th Cir. 2004). Notwithstanding its text, § 1981 prohibits discrimination against white people. *Doe v. Kamehameha Schs.*, 470 F.3d 827, 837 (9th Cir. 2006) (en banc). It also prohibits discrimination based on alienage. *Sagana*, 384 F.3d at 738–40.

The court analyzes § 1981 claims of employment discrimination by a private entity under the Title VII test in *McDonnell Douglas*. *Doe*, 470 F.3d at 837–39; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). This includes claims of discrimination in hiring. *See, e.g.*, *Lukovsky v. City & Cnty. of San Francisco*, No. C 05-00389 WHA, 2006 WL 436142, at *3 (N.D. Cal. Feb. 21, 2006). To survive this motion to dismiss, the plaintiff must plausibly allege that he is a member of a protected class, that Facebook intentionally discriminated against him, and that he would have been hired but for the discrimination.[25] *Lenk v. Sacks, Ricketts, & Case LLP*, No. 19-cv-03791-BLF, 2020 WL 2793480, at *4 (N.D. Cal. May 29, 2020); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (adding the pleading requirement of but-for causation); *McDonnell Douglas*, 411 U.S. at 802; *Young v. Buttigieg*, No. 19-cv-01411-JCS, 2021 WL 981305, at *6 (N.D. Cal. Mar. 16, 2021) (*McDonnell Douglas* burden-shifting framework does not apply at the motion-to-dismiss stage).

---

[25] *Id.* at 12–20.

### 2. Application

The issue is whether the plaintiff can assert a claim under § 1981 by alleging "discrimination on the basis of citizenship" based on Facebook's alleged "pattern and practice of discriminating against individuals who are not visa holders."[26] Facebook contends that U.S. citizens are not a protected class under § 1981.[27] No Ninth Circuit case addresses the issue directly. Most courts hold that U.S. citizens are not a protected class. The court follows this authority as persuasive.

The only appellate court to consider the issue is the Fifth Circuit. *Chaiffetz v. Robertson Rsch. Holding, Ltd.*, 798 F.2d 731 (5th Cir. 1986). The plaintiff there was an American employee of a British company and claimed that it failed to promote him, in violation of § 1981 and Title VII. *Id.* at 732. In affirming the district court's dismissal of the § 1981 claim, the Fifth Circuit held that "discrimination against Americans can never be discrimination based on alienage" and instead is "only discrimination based on national origin," which is not cognizable. *Id.* at 735.

Other courts have reached similar conclusions. *See, e.g.*, *Meyenhofer v. Larsen & Toubro Infotech Ltd.*, 503 F. Supp. 3d 39, 49–50 (S.D.N.Y. 2020) (no authority in the Second Circuit supported extending § 1981's prohibition against alienage discrimination to natural-born U.S. citizens) (collecting cases); *Maack v. Wyckoff Heights Med. Ctr.*, No. 15 Civ. 3951 ER, 2016 WL 3509338, at *15 (S.D.N.Y. June 21, 2016) (no Second Circuit precedent established that § 1981's "prohibition of alienage discrimination extends to naturalized U.S. citizens"); *Vaughn v. City of New York*, No. 06-cv-6547 (ILG), 2010 WL 2076926, at *10 (E.D.N.Y. May 24, 2010) (section 1981 prevents "discrimination on the basis of alienage, *i.e.* non-U.S. citizenship"); *Tomason v. Stanley*, No. 6:13-cv-42, 2013 WL 5652040, at *3–4 (S.D. Ga. Oct. 16, 2013) (dismissed claim that discrimination against American citizens is impermissible discrimination based on alienage, holding that "[a]lthough § 1981 permits claims of alienage discrimination and claims of reverse racial discrimination against whites, it does not permit claims of reverse alienage discrimination").

---

[26] Compl. – ECF No. 10 at 11 (¶¶ 42, 44).

[27] Mot. – ECF No. 25 at 12–15 (collecting cases).

A district court in the Ninth Circuit reached a different result in *Jimenez v. Servicios Agricolas Mex, Inc.* The plaintiffs were U.S. citizens and legal permanent residents who worked for the defendants picking lemons. 742 F. Supp. 2d 1078, 1082 (D. Ariz. 2010). They alleged that the defendants refused to hire them as farm workers in order to hire immigrant H-2A workers and claimed that this was prohibited discrimination under § 1981. The district court held that that § 1981 protects all persons, applies to U.S. citizens, and protects against "reverse discrimination." *Id.* at 1086–87 (applying *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285 (1976)).

At least one court has followed *Jimenez*. In *Hernandez v. Siri & Son Farms, Inc.*, U.S.-citizen agricultural workers challenged the defendant employer's hiring of H-2A workers. In denying the defendant summary judgment, the court held that there was a § 1981 claim: "[t]he heart of [the] [p]laintiff's claim is based on 'alienage' or citizenship status," which is cognizable. No. 6:20-CV-00669, 2021 WL 4999022, at *2–4, 7 (D. Or. Sept. 30, 2021), *R. & R. adopted*, 2021 WL 4993475 (D. Or. Oct. 27, 2021) (no objections filed). Another court assumed, without analysis, that a § 1981 claim can be predicated on U.S. citizenship. In *Murillo v. Servicios Agricolas Mex Inc.*, the plaintiffs — U.S. citizens and lawful permanent residents who were farmworkers — challenged the defendant employer's failure to employ them and instead employing H-2A visa holders. No. CV-07-2581, 2012 WL 1030084, at *1–2 (D. Ariz. Mar. 27, 2012). The court identified the legal standard: the plaintiffs "must demonstrate that it is more probable than not that the [d]efendants intentionally discriminated against them because they are United States citizens." *Id.* at *11 (citing cases that did not address citizenship as a protected class under § 1981). It then granted judgment under Rule 52 to the defendant employer for lack of proof because it was more probable than not that the plaintiffs did not apply for the jobs. *Id.*

The more persuasive authorities are those holding that discrimination based on citizenship is not the equivalent of discrimination based on alienage. For example, in *Meyenhofer*, U.S. citizens claimed that the defendant discriminated against them based on their citizenship by hiring persons of South Asian descent from India who were in the U.S. on work visas. The district court dismissed the claim, holding that U.S. citizens are not a protected class under § 1981. 503 F. Supp. 3d at 49–50. It acknowledged *McDonald*: § 1981 protects white persons (in addition to non-white persons)

from discrimination. *Id.* at 49. But while the Second Circuit has held that § 1981 prevents "alienage" discrimination, that authority does not support a conclusion that § 1981 prohibits discrimination based on U.S. citizenship. 503 F. Supp. 3d at 49–50 (citing *Anderson v. Conboy*, 156 F.3d 167, 180 (2d Cir. 1998)).

The Ninth Circuit similarly has held that § 1981 prohibits discrimination based on alienage: "the word 'citizen' [in § 1981] attests that a person cannot face disadvantage in the activities protected by § 1981 solely because of his or her alien status." *Sagana*, 384 F.3d at 738. It premised this conclusion on the premise that § 1981's guarantee — "that 'all persons' may enjoy the same rights that 'white citizens' enjoy" — "circumscribes the kinds of protections that may be claimed under its auspices." *Id.* The text does not, for example, protect against discrimination based on gender or religion. It does support the conclusion that § 1981 bars alienage discrimination. *Id.* The word "white" shows that § 1981 bars discrimination based on race, and the word "citizen" bars discrimination based on alien status. *Id.*

These cases illustrate that § 1981 protects primarily against racial discrimination and that "race" is interpreted broadly and extends to alien status (that is, non-U.S. citizen status). The legislative history of the statute also supports this conclusion. *Anderson*, 156 F.3d at 173–74 (discussing senators' concerns with protecting "aliens" who were working legally in the country). Through this lens, U.S. citizens are not a protected class under § 1981.

## CONCLUSION

In sum, § 1981 does not bar discrimination based on U.S. citizenship. The court dismisses the complaint with prejudice. This resolves ECF No. 25.

**IT IS SO ORDERED.**

Dated: November 10, 2022

LAUREL BEELER
United States Magistrate Judge