UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| PURUSHOTHAMAN RAJARAM, et al., <br><br>Plaintiffs, <br><br>v. <br><br>META PLATFORMS, INC., <br><br>Defendant. | Case No. 22-cv-02920-LB <br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE** <br><br>Re: ECF No. 91 |

## INTRODUCTION

This is a putative class action against Meta Platforms, Inc., formerly known as Facebook, Inc. The named plaintiffs — Purushothaman Rajaram, Ekta Bhatia, Qun Wang, Michael Browne, and William Webb — are U.S. citizens who applied for jobs with Meta or worked for Meta through a third-party vendor between May 2020 and January 2025. They allege that Meta terminated or did not hire them because it favors H-1B visa holders because it can pay them less than U.S. citizens. (The H-1B program allows U.S. employers to temporarily hire qualified foreign workers for certain specialty occupations when the employers cannot otherwise obtain the needed skills from

workers authorized to work in the U.S. 8 C.F.R. § 214.2(h)(1)(ii)(B).) The plaintiffs claim that this hiring practice violates 42 U.S.C. § 1981(a) by discriminating against U.S. citizens.[1]

Meta moved to strike the class allegations of the plaintiffs' third amended complaint (TAC).[2] The plaintiffs counter that the motion is premature because discovery has not begun. The court grants the motion in part and denies it in part.

**STATEMENT**

The TAC defines two classes: (1) a "hiring class" including "[a]ll individuals who are not visa holders who applied for the following positions with (or within) Facebook and/or Meta in the U.S., either directly or through a third party vendor, and were not hired: Software Engineer, Research Scientist, Data Scientist, Data Engineer, Data Analyst, Engineer, Engineering Manager, Machine Learning, and PLM roles," and (2) a "termination class" including "[a]ll individuals who are not visa holders who were employed by Facebook and/or Meta in the U.S., either directly or through a third-party vendor (e.g., Crystal Equation Corporation, Infosys, and others), and were terminated."[3] Plaintiffs Rajaram, Bhatia, Wang, and Browne represent the hiring class, and plaintiff Webb represents the termination class.

The allegations for the hiring-class plaintiffs generally follow the same story: they were qualified for positions with Meta, applied for one or more positions, performed well in interviews, but were ultimately not hired in favor of visa holders.[4]

Plaintiff Webb is the only named plaintiff who is alleged to have worked for Meta. He is a senior data engineer and scientist with a bachelor of science from the California Institute of Technology and a master of science in computer science from the University of Washington. In August 2023, he "began working for Meta as a Senior Data Scientist, a contractual employee role

---

[1] Third Am. Compl. (TAC) – ECF No. 87. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 91.

[3] TAC – ECF No. 87 at 29 (¶ 93).

[4] *Id.* at 9–21 (¶¶ 26–72).

ORDER – No. 22-cv-02920-LB        2

staffed through one of Meta's third-party vendors, Crystal Equation Corporation."[5] "Consistent with Meta's corporate practice of directing, controlling, and supervising the work of staff provided by third-party contractors such as Crystal Equation Corporation, Infosys, and others, the work performed by Mr. Webb for Meta was at the direction and control of Meta, and benefitted Meta."[6]

Mr. Webb was placed on a data engineering team at Meta called Enterprise Infrastructure, Security, and Analytics, which was staffed with contractual workers, like Mr. Webb, and other employees of Meta, all of whom worked remotely. The team was managed by Chen Zheng, a Chinese national and Meta employee.[7] The Enterprise Infrastructure, Security, and Analytics team started a few years before Mr. Webb began working for Meta and was comprised of "a large number of contractual workers and a small number of other Meta employees." Non-contractual Meta employees on Mr. Webb's team were predominantly Chinese and held H-1B visas or had recently received green cards. The contractual workers provided by Crystal Equation Corporation were a mix of U.S. citizens and Chinese and Indian H-1B visa workers.[8]

Mr. Webb's understanding is that Meta and Crystal Equation Corporation had previously maintained an "up-or-out" agreement where contractual employees who worked for Meta for approximately two years were either retained as non-contractual Meta employees (receiving higher compensation and better benefits than contractual employees) or terminated.[9] He performed well in his senior data scientist role, was well received by other Meta employees, and supported a number of successful projects during his first six months with Meta. Mr. Webb was "highly regarded for his data science capabilities and was also known outside of his team at Meta for these abilities."[10] Despite his strong performance, Mr. Webb was terminated in favor of retaining

---

[5] *Id.* at 21–22 (¶¶ 73, 76).
[6] *Id.* at 22–23 (¶ 77) (cleaned up).
[7] *Id.* at 23 (¶ 78).
[8] *Id.* (¶ 79).
[9] *Id.* (¶ 80).
[10] *Id.* at 24 (81).

Chinese H-1B visa contractual workers (including Keer Huang and Jingyuan Lin) with comparable experience and tenure.[11]

Mr. Webb asked whether instead of being terminated he could be transferred to another team within Meta, as his data scientist skills were in demand (evidenced by Crystal Equation Corporation's attempts to hire additional data scientists for Meta), but Ms. Zheng did not allow him to transfer. Mr. Webb's Korean colleague (also a U.S. citizen) was terminated a few months before Mr. Webb. Months after Mr. Webb's departure from Meta, two Chinese visa employees were retained and allowed to transfer to other teams, while the remaining contractual technical workers on Mr. Webb's former team were terminated and denied transfer.[12]

In October 2024 and January 2025, Mr. Webb was contacted, respectively, by Michael Woo, a technical recruiter for Meta, and Avneet Grewall with Mindlance, a third-party recruiter for Meta, both of whom informed Mr. Webb of open roles with Meta suited to his skills. Mr. Webb applied for the positions with Meta, was qualified for them, performed well in interviews, but was ultimately not hired in favor of visa-holders.[13]

It is undisputed that the court has subject-matter jurisdiction. 28 U.S.C. §§ 1331–32; 42 U.S.C. § 1981(a). All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[14] The court held a hearing on July 31, 2025.

**STANDARD OF REVIEW**

The court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. If

---

[11] *Id.* at 24–25 (¶¶ 82, 84).

[12] *Id.* at 25 (¶ 84).

[13] *Id.* at 26–29 (¶¶ 86–92).

[14] Consents – ECF Nos. 8, 15.

there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (cleaned up). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id*. "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of N.Y. Mellon*, No. 12-cv-00846-LHK, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

## ANALYSIS

The issues boil down to whether it is appropriate to strike the plaintiffs' class allegations before discovery has begun. Meta contends that the court should strike the plaintiffs' class allegations because (1) the hiring and termination classes both include members who are non-citizens and who suffered no injury because they were not passed over or replaced by a visa-holder (meaning they have no claim under § 1981), (2) the allegations do not support a hiring vendor other than Infosys for the hiring class and Crystal Equation for the termination class, (3) the termination class is overbroad because it is not limited to specific roles, and (4) plaintiff Webb cannot represent termination class members who were directly hired by Meta because he was a contract worker who was not retained.[15]

The plaintiffs agree that they will "only seek certification on behalf of a class of U.S. citizens" but counter that (1) it is premature for a motion to strike, (2) overbreadth is not a ground for striking class allegations under Rule 12(f), (3) the plaintiffs have pleaded that other vendors were involved, and (4) plaintiff Webb was jointly employed by Meta and Crystal Equation and later fired.[16]

The court grants the motion in part and denies it in part. The plaintiffs concede that the class definitions are overbroad as to including non-citizens. It is also appropriate to strike the allegations defining class members as people who were hired or fired for any reason because the plaintiffs

---

[15] Reply – ECF No. 96 at 7–13.
[16] Opp'n – ECF No. 95 at 13–18.

must have been harmed because of their status as a United States citizen to invoke § 1981. Discovery will not fix these issues. But it may for the remaining disputes.

Class allegations generally are not tested at the pleadings stage and instead are tested after one party has filed a motion for class certification. *See, e.g.*, *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008); *In re Wal–Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007). Nonetheless, as the Supreme Court has explained, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Thus, a court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained. *See, e.g.*, *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009). Such a motion can be granted with leave to amend. *Id.* at 991.

First, the plaintiffs concede that their class allegations are overbroad because they include non-citizens who cannot make a claim under § 1981. They promised in their brief to "only seek certification on behalf of a class of U.S. citizens" and stated at the hearing that they were agreeable to amending.[17] The plaintiffs contend that striking the allegations is still premature and that overbreadth is not a ground to strike their allegations. But courts have done so in similar situations. *See Sutcliffe v. Wells Fargo Bank, N.A.*, No. C-11-06595 JCS, 2012 WL 4835325, at *5 (N.D. Cal. Oct. 9, 2012) (striking overbroad class allegations based on the plaintiffs' concession that they would not seek recovery on certain grounds). Thus, the court grants the motion to strike as to the inclusion of all non-visa holders as class members.

Second, because § 1981 also requires that the discrimination be based on a person's U.S. citizenship, the court grants the motion as to the absence of a limitation on the reason class members were terminated or not hired.[18] It is not premature to do so because no amount of discovery would fix this issue. *See Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 882–83 (N.D. Cal. 2024) (collecting cases).

---

[17] *Id.* at 13.

[18] Reply – ECF No. 96 at 8–9.

Third, Meta's remaining objections to the class allegations regarding vendors, plaintiff Webb's status, and termination class roles are premature. Meta contends that the plaintiffs' complaint lacks allegations that any third-party vendor outside of Infosys and Crystal Equation discriminated against potential hires.[19] The plaintiffs counter that they allege that Meta discriminates across all its vendors and that, in any event, they do not need to identify every vendor at the pleading stage.[20] The class allegations about vendors are sufficiently specific. *See Garza v. Swift Beef Co.*, No. CV 22-06223 PSG (E), 2024 WL 5415842, at *12–13 (C.D. Cal. Jan. 23, 2024) ("Plaintiffs' class definition is not overbroad because it is limited to class members employed by Defendant, whether directly or indirectly. Plaintiffs need not name specific staffing agencies at this time.").

Meta contends that the termination class should be struck as overbroad because it is not limited to specific roles like the hiring class.[21] But overbreadth alone does not warrant striking, and discovery may shed more light on this issue.[22]

Regarding plaintiff Webb, the plaintiffs have pleaded that although he worked for a third-party vendor, his employment was controlled by Meta.[23] Thus, striking related allegations now would be premature.

## CONCLUSION

The court grants the motion as to the class definitions' inclusion of class members who are non-citizens or were terminated or not hired for any reason. The court denies the remainder of the motion as premature.

**IT IS SO ORDERED.**

Dated: September 19, 2025

LAUREL BEELER
United States Magistrate Judge

---

[19] *Id.* at 9–13.

[20] Opp'n – ECF No. 95 at 15–20.

[21] Reply – ECF No. 96 at 13.

[22] Opp'n – ECF No. 95 at 20–21 (making these points).

[23] Reply – ECF No. 96 at 11–12; Opp'n – ECF No. 95 at 18–20; TAC – ECF No. 87 at 22–23 (¶ 77).