United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| PURUSHOTHAMAN RAJARAM, et al.,<br>Plaintiffs,<br>v.<br>META PLATFORMS, INC.,<br>Defendant. | Case No. 22-cv-02920-LB<br>**ORDER**<br>Re: ECF No. 146 |

**INTRODUCTION & STATEMENT**

The plaintiffs are four U.S. citizens who applied unsuccessfully for jobs at Meta Platforms, Inc. They allege that Meta prefers visa holders over U.S. citizens in hiring, in violation of 42 U.S.C. § 1981, and they seek to represent a class of applicants to nine job categories: Software Engineer, Research Scientist, Data Scientist, Data Engineer, Data Analyst, Engineer, Engineering Manager, Machine Learning, and Product Lifecycle Management (PLM).[1] The court staged discovery: round one is "aimed at getting early insight into the individual claims (presumably affected by data in this practices case) but without foreclosing insight into the class claims (as

[1] Compl. – ECF No. 105 at 34 (¶ 108); Joint Letter – ECF No. 146 at 2 n.2. Citations refer to the Electronic Case File (ECF): pinpoint citations are to the ECF-generated page numbers at the top of documents.

discussed at the initial CMC)."[2] The parties dispute what that means for fourteen document requests: applicant, employee, contractor, visa, and PERM data for the nine job categories or company-wide (RFPs 1–5, 9, and 24–27); complaints of citizenship or visa-status discrimination (RFP 28); and documents about a Department of Justice investigation, other government inquiries, and a September 2025 letter from two senators (RFPs 29–31).[3] The plaintiffs read the staging order as permitting class-wide pattern-or-practice discovery now. Meta reads it as confining discovery to information with a "nexus" to the named plaintiffs, and it says that its production of anonymized applicant-flow data for every position the named plaintiffs applied to — more than 13,000 positions and nearly half a million candidates — is all that round one requires.[4]

Neither reading is right. Round one centers on the named plaintiffs' claims, and the plaintiffs cannot use it to take full class discovery before the court decides whether a class is viable. But in the Ninth Circuit, evidence of a general pattern of discrimination is probative of intent in an individual disparate-treatment case, so Meta cannot refuse every request that reaches beyond the named plaintiffs' own requisitions. Also, post *Walmart v. Dukes*, as a matter of case management, parties need insight into the class issues relatively early, if only to evaluate the strength of the case and potential case plans, including settlement.

The question for each request is whether the information is relevant to the named plaintiffs' claims and proportional to the needs of a staged case. Applying that test, the court rules as follows.[5]

(1) Applicant-flow data (RFPs 1 and 27): denied without prejudice. Meta's production is presumptively sufficient for round one, but Meta must confirm that it contains the fields listed in RFP 1 for the produced positions and must supplement it if it does not. The plaintiffs may renew the request if, after analysis, they identify a specific gap.

(2) Employee-, visa-, and PERM-level data (RFPs 2, 4, and 5): denied for round one, except

---

[2] Case-Management & Pretrial Order – ECF No. 116 at 2.

[3] Joint Letter – ECF No. 146 at 1; Grunert Decl. – ECF No. 146-1 at 2–4 (¶ 8), 5–7 (¶ 14).

[4] Joint Letter – ECF No. 146 at 1–5.

[5] The court decides the dispute without oral argument. Civil L.R. 7-1(b).

United States District Court
Northern District of California

that Meta must produce the one PERM application it has identified in connection with the positions the named plaintiffs applied to.

(3) Aggregate workforce, visa, and PERM figures (RFPs 24–26): granted for the relevant period.

(4) Contractor data (RFPs 3 and 9): granted only as to the Infosys engagement(s) for which plaintiff Rajaram was considered; otherwise denied for round one.

(5) Complaints (RFP 28): granted in part, limited to complaints alleging a preference for visa holders over U.S. citizens, or citizenship- or immigration-status discrimination, in U.S. recruiting or hiring, with documents sufficient to show the disposition of each.

(6) The DOJ investigation (RFP 29): granted in part, limited to the OCAHO filings and settlement, the documents Meta produced to the DOJ, and documents sufficient to show the practice changes made under the settlement.

(7) Other government inquiries (RFP 30): denied without prejudice, except that Meta must identify any other government investigation into citizenship-status discrimination in its U.S. hiring during the relevant period.

(8) The senators' letter (RFP 31): granted as to the letter and Meta's response; otherwise denied for round one.

## STATEMENT

### 1. The Case and the Staging Order

Plaintiffs Purushothaman Rajaram, Ekta Bhatia, Michael Browne, and Stephen Schutt are U.S. citizens who applied for jobs at Meta and were not hired.[6] They allege that Meta favors visa-dependent workers over U.S. citizens in hiring for the nine job categories. As evidence of the practice, the operative complaint pleads a Department of Justice investigation of Facebook's recruitment and hiring practices that produced a complaint before the Office of the Chief

[6] Compl. – ECF No. 105 at 3 (¶¶ 4–5, 7, 9), 11 (¶ 35), 15 (¶ 58), 21 (¶ 74), 34 (¶ 107). All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c). Consents – ECF Nos. 8, 15, 48, 113.

Administrative Hearing Officer (OCAHO) and an October 2021 settlement.[7] It also alleges that Mr. Rajaram applied for a PLM role at Meta through Infosys Limited, a staffing vendor, and was rejected.[8] The Ninth Circuit held in this case that § 1981 prohibits discrimination against U.S. citizens on the basis of citizenship. *Rajaram v. Meta Platforms, Inc.*, 105 F.4th 1179, 1181–82 (9th Cir. 2024).

The plaintiffs served their first document requests (five data requests seeking applicant, employee, contractor, visa, and PERM data) in October 2024. Meta objected and produced nothing.[9] In the October 2025 case-management statement, Meta proposed bifurcating discovery so that class discovery would follow a decision on the viability of the individual claims; the plaintiffs opposed bifurcation, contending that the case is "largely about statistics" and that deciding the individual claims before certification would deprive them of the *Teamsters* presumption.[10] At the October 2025 case-management conference, the court chose to stage, not bifurcate, discovery, with the initial focus on the named plaintiffs' claims.[11] The resulting order set "disclosure, filing, and hearing dates, aimed at getting early insight into the individual claims (presumably affected by data in this practices case) but without foreclosing insight into the class claims (as discussed at the initial CMC)."[12]

The plaintiffs then narrowed RFPs 1–5 to the nine job categories and served a second set of requests (RFPs 6–31).[13] Meta objected to the disputed requests as contrary to the staging order, premature, unduly burdensome, and disproportionate, and it stood on those objections in amended responses in January 2026.[14] It agreed to produce applicant-flow data for the openings the named

[7] Compl. – ECF No. 105 at 7–8 (¶¶ 22–24).

[8] *Id.* at 9–10 (¶¶ 29–31).

[9] Grunert Decl. – ECF No. 146-1 at 1–2 (¶¶ 2–3).

[10] *Id.* at 2 (¶ 4) (citing Joint CMC Statement – ECF No. 106 at 3–5, 12–13).

[11] *Id.* at 2 (¶ 6); Minute Order – ECF No. 114. Paragraph 6 of the Grunert declaration is plaintiffs' counsel's characterization of the court's remarks at the conference.

[12] Case-Management & Pretrial Order – ECF No. 116 at 2.

[13] Grunert Decl. – ECF No. 146-1 at 2–5 (¶¶ 8–9). The declaration does not give the date of the narrowed requests or the second set.

[14] *Id.* at 5 (¶¶ 10–11, 13).

plaintiffs applied to but not for other positions.[15] On September 23, 2026, Meta produced anonymized applicant-flow data for the positions the named plaintiffs applied to between October 2019 and May 2026 — nearly 300 applications, many to "pipeline" or evergreen postings used to fill many positions over several years — comprising almost half a million candidates, more than 17 million fields, and more than 13,000 positions.[16] The parties met and conferred in December 2025 and on September 8, 2026, and filed the joint letter on September 25, 2026.[17]

**2. The Disputed Requests**

The fourteen disputed requests fall into three groups.[18] The first is data. RFP 1 seeks, for every applicant to the nine job categories in the United States during the relevant period, the applicant's identity, citizenship, visa type, application date and source, requisition, interview, offer, and hire outcome, and (if the applicant was not hired) the name, citizenship, and visa type of the person hired. RFP 27 seeks the same for candidates considered for more than one position. RFP 2 seeks a roster of every U.S. employee in the nine categories with citizenship, visa type, positions, levels, PERM sponsorship, pay, and termination data. RFPs 3 and 9 seek identity, citizenship, visa, and placement data for every third-party (RFP 3) or Infosys (RFP 9) contractor who performed technology services for Meta in those categories. RFPs 4 and 5 seek employee-level visa and PERM application data for the nine categories. RFPs 24–26 seek documents sufficient to show, for each year, the number of Meta's U.S. employees and how many are visa-dependent (RFP 24); the number of visa applications and approvals by visa type and the number of visa-dependent employees who traveled to or were hired in the United States (RFP 25); and the number of PERM applications filed, approved, and certified (RFP 26).

[15] *Id.* at 5 (¶ 12).

[16] Joint Letter – ECF No. 146 at 2–5. Meta has also produced the non-privileged documents it exchanged with government entities about the charges the named plaintiffs filed, and it has identified one PERM application connected to the positions the named plaintiffs applied to and agreed to produce information about it. *Id.* at 4–5. Meta says the PERM statement was made "under oath."

[17] *Id.* at 1; Grunert Decl. – ECF No. 146-1 at 7 (¶ 16).

[18] The text of the requests is at Grunert Decl. – ECF No. 146-1 at 3–4 (¶ 8) (RFPs 1–5, as narrowed) and 6–7 (¶ 14) (RFPs 9, 24–31).

The second group is RFP 28, which seeks all complaints and internal grievances by U.S. applicants or employees concerning citizenship, Meta's use of visas or visa workers, PERM hiring, or citizenship- or visa-status discrimination, together with communications about each complaint, internal-investigation materials, and any resulting agency, litigation, arbitration, or mediation filings and Meta's responses.

The third group concerns government inquiries. RFP 29 seeks all documents and ESI concerning the DOJ investigation and OCAHO proceeding, including documents exchanged with the DOJ, the OCAHO complaint and filings, the October 2021 settlement, and documents reflecting changes Meta made to its practices under the settlement. RFP 30 seeks all documents exchanged with any federal or state government entity concerning any investigation or inquiry into Meta's visa, PERM, or green-card practices, citizenship discrimination, or employment discrimination. RFP 31 seeks all documents relating to a September 24, 2025 letter from Senators Grassley and Durbin asking why Meta was filing H-1B petitions while laying off U.S. employees, including internal communications and Meta's response.[19]

## LEGAL STANDARDS

Parties may obtain discovery of any nonprivileged matter that is relevant to a claim or defense and proportional to the needs of the case, considering the importance of the issues, the amount in controversy, the parties' relative access to information and resources, the importance of the discovery in resolving the issues, and whether the burden or expense outweighs the likely benefit. Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.* The party seeking discovery must show relevance; the party resisting it must support its objections, including any claim of burden. *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012).

The court has "broad discretion to tailor discovery narrowly and to dictate the sequence of

[19] Grunert Decl. – ECF No. 146-1 at 4–5 (¶ 9), 6–7 (¶ 14). RFP 29 refers to "the December 3, 2023 Complaint"; the letter describes a "2020 DOJ investigation" that settled in October 2021.

discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); Fed. R. Civ. P. 26(d)(3). That discretion extends to how much discovery into class claims to permit before certification. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009); *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

## ANALYSIS

### 1. The Scope of Round One

The threshold issue is what the staging order permits. The plaintiffs read the order's reference to "data in this practices case" and its refusal to "foreclos[e] insight into the class claims" as an entitlement to class data now.[20] Meta reads the order as limiting discovery to information with a nexus to the named plaintiffs, and it says that the plaintiffs are relitigating a settled question.[21]

The order's object is "early insight into the individual claims." The parenthetical recognizes that in a case alleging a hiring practice, data about the practice bear on whether the practice caused the named plaintiffs' rejections. And "without foreclosing insight into the class claims" preserves the plaintiffs' ability to develop class evidence in due course; it does not authorize full class discovery in the first stage, which would defeat the point of staging. So Meta is right that the plaintiffs cannot take class-wide discovery now, and the plaintiffs are right that the order does not confine them to their own requisitions. Nor is this dispute a relitigation of anything: the order set the focus of round one without defining its edges, and this is the dispute the order anticipated.

The substantive law fills in the rest. In an individual disparate-treatment case, statistical data are relevant because they "can be used to establish a general discriminatory pattern in an employer's hiring or promotion practices," which "is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue." *Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005) (cleaned up) (quoting *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1363 (9th Cir. 1985)). Evidence that the employer discriminated against others on the same basis is likewise relevant to intent. *Lyons v. England*, 307 F.3d 1092, 1110–11

[20] Joint Letter – ECF No. 146 at 1–2.

[21] *Id.* at 3.

United States District Court
Northern District of California

(9th Cir. 2002). Courts in this district have compelled applicant data in single-plaintiff cases on that reasoning. *Hamilton v. RadioShack Corp.*, No. C 11–00888 LB, 2012 U.S. Dist. LEXIS 84827, at *6–7 (N.D. Cal. June 18, 2012); *Canton v. U.S. Foods, Inc.*, No. 22-cv-04226-TLT (LJC), 2023 WL 4372699, at *3 (N.D. Cal. July 5, 2023).

Meta's contrary authorities do not change the analysis. *Koehler v. Infosys Technologies Ltd.* is an out-of-circuit district-court decision at summary judgment, after class certification was denied, about whether individual plaintiffs may invoke the *Teamsters* pattern-or-practice framework and its burden shift.[22] That framework is a class device: a class-wide showing of a pattern shifts the burden to the employer as to class members, whereas an individual plaintiff must prove his own claim under the ordinary framework. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336–39, 360–62 (1977); *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 876 (1984) (the class/individual distinction). But how the plaintiffs must prove their claims is a different question from what they may discover, and on the latter the Ninth Circuit has held that pattern evidence is probative of intent in an individual case. *Obrey*, 400 F.3d at 694. *Taub v. Tesla* is not analogous either. Judge Chhabria limited initial discovery there to whether the plaintiff was deterred from applying for a single advertised position, and the later data ruling followed from that limit.[23] This court's order contains no comparable limit.

The test for each request, then, is whether the information is relevant to the named plaintiffs' claims (including as evidence of the alleged practice) and proportional given that class discovery is deferred. Meta, as the resisting party, bears the burden of supporting its objections. Apart from describing the volume of what it has already produced, it has made no burden showing for any request.

---

[22] *Id.* at 4 (citing *Koehler v. Infosys Techs. Ltd.*, No. 2:13-cv-00885 (E.D. Wis. June 24, 2025)).

[23] Grunert Decl. – ECF No. 146-1 at 7 (¶ 15) (quoting *Taub v. Tesla, Inc.*, No. 3:25-cv-07785, ECF No. 44 at 2 (N.D. Cal. Feb. 23, 2026)); Joint Letter – ECF No. 146 at 4.

**2. Applicant, Employee, Contractor, Visa, and PERM Data (RFPs 1–5, 9, and 24–27)**

**2.1 Applicant-Flow Data (RFPs 1 and 27)**

The dispute reduces to whether round one requires applicant-flow data for positions the named plaintiffs never applied to. On this record, it does not. The comparator pool for each named plaintiff's rejection is the pool of applicants to the positions he or she applied to, and Meta has produced it (for every position, including the pipeline postings, across nearly seven years).[24] The plaintiffs' sample-size concern, *see Morita v. S. Cal. Permanente Med. Grp.*, 541 F.2d 217, 219–20 (9th Cir. 1976) (statistics based on eight people unpersuasive), does not fit a data set of hundreds of thousands of candidates across thousands of positions in the same job categories. Data on positions the named plaintiffs did not seek would add something to a pattern showing, but it is, in substance, the class data whose production the staging order deferred, and its incremental value to the individual claims does not justify ordering it now.

Two qualifications. First, Meta produced the data two days before the parties filed the letter, and the plaintiffs have not been able to test it.[25] The production's sufficiency depends on its content: applicant-flow data that lack citizenship and visa fields, application source, or outcome (the fields RFP 1 specifies) would not serve the purpose that justifies withholding the broader set. Within 14 days, Meta must confirm in writing which of the fields listed in RFP 1 the production contains for the produced positions, and it must supplement the production with any listed field it maintains that is missing, including the citizenship and visa type of the person hired for each position. Meta may continue to produce the data in anonymized form with a unique identifier for each candidate; any dispute about identities is for another day. Second, the denial is without prejudice. If, after analysis, the plaintiffs identify a concrete gap that the produced data cannot fill (for example, a job category or period with too few observations to support a reliable analysis), they may renew the request for that gap, identifying it and the additional data needed.

RFP 27 is subsumed: candidates considered for more than one position appear in the applicant-

---

[24] Joint Letter – ECF No. 146 at 4–5.

[25] *Id.* at 2–3.

United States District Court
Northern District of California

flow data for the positions the named plaintiffs applied to, and beyond that the request seeks class-wide data. It is denied without prejudice on the same terms.[26]

**2.2 Employee Data (RFPs 2 and 24)**

RFP 2 is denied for round one. The employee-level information that bears on the individual claims — who was selected for the positions the named plaintiffs applied to, and that person's citizenship and visa type — is a field of RFP 1 and is covered by the supplementation ordered above. The rest (pay, levels, terminations, and PERM sponsorship for every employee in nine job categories) is class merits data, and the plaintiffs do not say what it would add to the individual claims now.

RFP 24 is granted. A "documents sufficient to show" request for annual headcounts is minimally burdensome, and the figures go to the heart of the alleged practice: a workforce in which visa-dependent employees are concentrated, growing, or both is evidence that the practice exists and of its scale, which is probative of intent under *Obrey* and *Diaz*. Meta has shown no burden. It must produce the figures for the relevant period, company-wide for its U.S. workforce and, to the extent its systems permit without disproportionate effort, for the nine job categories.

**2.3 Contractor Data (RFPs 3 and 9)**

The plaintiffs' justification for the contractor requests is that Mr. Rajaram applied through Infosys for a PLM role and was rejected.[27] That justification supports a narrower production than the plaintiffs seek. Whether Meta prefers visa holders when staffing vendor placements is relevant

[26] The court could have ruled the other way. The guidance at the October 2025 case-management conference was that the parties should learn what happened with the named plaintiffs in the context of Meta's larger practices, and the order's reference to "data in this practices case" reflects that guidance. Grunert Decl. – ECF No. 146-1 at 2–3 (¶¶ 4, 6–7) (quoting 7/31/2025 Hr'g Tr. 9:8–12). In a case that the plaintiffs describe, and the court accepted, as "largely a case about statistics," applicant-flow data confined to the named plaintiffs' requisitions may misstate the pattern: pipeline postings to which a plaintiff happened to apply may differ systematically from the job categories as a whole. RFP 1 as narrowed is limited to the nine categories, U.S. positions, and the relevant period, and Meta has already built an extraction covering a substantial share of those positions. The incremental burden of extending the extraction to the remaining positions in the same categories has not been shown to be disproportionate. The court thus could have granted RFP 1 as narrowed, with production permitted in anonymized form and with the fields listed in the request. RFP 27 is denied as duplicative. The court nonetheless thinks that its first reasoning is the better approach. Meta made no burden showing beyond the volume of its existing production.

[27] Joint Letter – ECF No. 146 at 2; Compl. – ECF No. 105 at 9–10 (¶¶ 29–31).

to Mr. Rajaram's claim, and the most probative evidence is what happened with the engagement he sought: who else the vendor proposed, whom Meta selected, and their citizenship and visa type. A roster of every vendor contractor in nine job categories is class discovery, and the plaintiffs identify nothing about the individual claims that requires it now. RFPs 3 and 9 are granted in part: Meta must produce documents sufficient to show, for each Infosys engagement or requisition for which Mr. Rajaram was proposed or considered, the candidates proposed, the person or persons selected, and each person's citizenship and visa type, to the extent that information is in Meta's possession, custody, or control.[28] The requests are otherwise denied for round one.

**2.4 Visa and PERM Data (RFPs 4, 5, 25, and 26)**

The employee-level requests (RFPs 4 and 5) are denied for round one for the reasons given for RFP 2: the sponsorship history of particular employees adds little to the individual claims beyond what the aggregate figures show. Meta must produce the one PERM application it has identified in connection with the positions the named plaintiffs applied to, as it has agreed to do.[29]

The aggregate requests (RFPs 25 and 26) are granted. Meta's "one PERM application" point misreads the relevance. The plaintiffs do not seek visa and PERM data to find a comparator; they seek it because the alleged practice is a preference for visa-dependent workers, and the volume of Meta's visa petitions and permanent-labor-certification filings measures the extent of that reliance. The complaint pleads the DOJ's investigation of Facebook's PERM-related recruitment as evidence of the practice.[30] Annual counts are minimally burdensome — much of the information is reported to the Department of Labor in any event — and Meta has shown no burden. It must produce the figures for the relevant period, company-wide for U.S. positions and, to the extent its systems permit without disproportionate effort, for the nine job categories.

---

[28] Meta has not said whether it has vendor personnel's citizenship and visa data.

[29] Joint Letter – ECF No. 146 at 4.

[30] Compl. – ECF No. 105 at 7–8 (¶¶ 22–24).

**3. Complaints of Citizenship or Visa-Status Discrimination (RFP 28)**

Evidence that an employer discriminated against others on the same basis is relevant to whether it intentionally discriminated against the plaintiff. *Lyons*, 307 F.3d at 1110–11; *Heyne v. Caruso*, 69 F.3d 1475, 1479–80 (9th Cir. 1995). Courts compel discovery of other complaints on that basis but limit it by subject, time, and unit. *See DelVecchia v. Frontier Airlines, Inc.*, No. 2:19-cv-01322-KJD-DJA, 2020 WL 2308224, at *2 (D. Nev. May 8, 2020) (compelling five years of complaints on the same basis but narrowing the request). Meta's contrary case, *Park v. Jaguar Land Rover N. Am., LLC*, No. 20cv242-BAS (MSB), 2020 WL 4784740, at *6 (S.D. Cal. Aug. 17, 2020), concerned a request identifying every customer with a similar product complaint, not employment-discrimination complaints.

RFP 28 is granted in part. Meta's "no nexus" objection fails as to complaints alleging the practice at issue: a preference for visa holders over U.S. citizens in recruiting or hiring, or discrimination in recruiting or hiring on the basis of citizenship or immigration status. Those complaints are the other-act evidence *Lyons* describes, and their subject is the named plaintiffs' theory. But the request is overbroad in three respects: it reaches complaints about Meta's "use of visas" generally, which need not involve discrimination against anyone; it reaches all communications and internal-investigation materials, which multiplies the burden without a corresponding gain in probative value at this stage; and it has no time limit. Meta must produce (1) complaints and internal grievances, formal or informal, made during the relevant period by applicants for or employees in U.S. positions, alleging that Meta preferred visa holders or non-citizens over U.S. citizens in recruiting or hiring or discriminated in recruiting or hiring on the basis of citizenship or immigration status; (2) documents sufficient to show the disposition of each; and (3) any resulting charge, complaint, or demand filed with an agency, court, arbitrator, or mediator, and Meta's response. The request is otherwise denied for round one.

United States District Court
Northern District of California

**4. Government Investigations and the Senators' Letter (RFPs 29–31)**

**4.1 The DOJ Investigation (RFP 29)**

The DOJ investigation is relevant. The complaint pleads it as evidence of the practice,[31] and its subject — the DOJ's allegation that Facebook reserved positions for temporary-visa holders it was sponsoring for permanent residence and used recruiting methods designed to deter U.S. workers from applying — is the same preference the plaintiffs allege. That the matter settled without a finding goes to weight and admissibility, not discoverability. Fed. R. Civ. P. 26(b)(1); *see* Fed. R. Evid. 408 (rule of admissibility); *Manzo v. County of Santa Clara*, No.17-cv-01099-BLF(VKD), 2019 WL 2866047, at *3 (N.D. Cal. July 3, 2019) ("[Rule] 408 governs the *admissibility* of evidence" and "does not address the discoverability of settlement-related materials"). *Munoz v. PHH Corp.*, No. 1:08–cv–0759–AWI–BAM, 2013 WL 684388, at *4–6 (E.D. Cal. Feb. 22, 2013), compelled production of what a defendant had produced to an agency investigating the same conduct; *Chen v. Ampco System Parking*, No. 08–CV–0422–BEN (JMA), 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009), on which Meta relies, denied a request for everything produced in another case on a showing of mere "similarities." This case is closer to *Munoz*. But the request as framed ("all documents and ESI concerning" the investigation) sweeps in Meta's internal communications about a government investigation, much of it likely privileged, and the plaintiffs do not say what those would add.

RFP 29 is granted in part. Meta must produce (1) the OCAHO complaint, its filings in the OCAHO proceeding, and the settlement agreement, to the extent not already public; (2) the documents it produced to the DOJ in the investigation; and (3) documents sufficient to show the changes to its recruiting and hiring practices that it made under the settlement. The request is otherwise denied for round one. That the investigation concerned conduct that preceded or overlapped the start of the relevant period does not defeat relevance: the plaintiffs allege a continuing practice, and what Meta changed after the settlement bears on whether the practice

---

[31] *Id.*

continued into the period when the named plaintiffs applied.[32]

**4.2 Other Government Inquiries (RFP 30)**

RFP 30's third category (investigations into "employment discrimination" of any kind) is untethered to the claims; investigations of other forms of discrimination say nothing about citizenship. As to the first two categories, the plaintiffs identify no investigation other than the DOJ matter (addressed under RFP 29) and the named plaintiffs' own charges (which Meta has produced). RFP 30 is denied without prejudice, except that within fourteen days Meta must identify in writing any government investigation or inquiry during the relevant period into citizenship- or immigration-status discrimination in its U.S. recruiting or hiring, so that the plaintiffs can frame a targeted request if one exists.

**4.3 The Senators' Letter (RFP 31)**

The September 2025 letter is public, and it is neither an investigation nor a finding; its relevance to the named plaintiffs' applications is modest. But Meta's response, if any, is Meta's own account of why it hires visa workers and how it treats U.S. workers, which is relevant to intent, and producing it costs nothing. Internal communications about a senators' letter are marginal, likely privileged in large part, and disproportionate in round one. RFP 31 is granted as to the letter and any response Meta provided to the senators, and it is otherwise denied for round one.

---

[32] In reaching this outcome, the court considered deferring the discovery issue to round two. The DOJ investigation concerned Facebook's recruitment for positions it was reserving for sponsored employees during in 2018–2019. The named plaintiffs' claims concern Meta's selection among applicants to ordinary requisitions from October 2019 forward. The overlap is at the level of the alleged practice (the class theory), not evidence about the named plaintiffs' applications, and the public record of the proceeding (the complaint and the settlement) is available to the plaintiffs without discovery. Given the burden of collecting and reviewing an investigation file for a matter that predates the plaintiffs' applications, and Meta's production of the documents it exchanged with government entities about the named plaintiffs' own charges, the court could have deferred RFP 29 to round two. The court nonetheless settled on the approach above.



United States District Court
Northern District of California

**CONCLUSION**

The court grants in part and denies in part the relief the plaintiffs seek in the joint letter, as follows. "The relevant period" means October 2019 through May 2026. Unless a shorter deadline is stated, Meta must complete each ordered production within thirty days of this order.

(1) RFPs 1 and 27 are denied without prejudice. Within fourteen days, Meta must confirm in writing which of the fields listed in RFP 1 its applicant-flow production contains for the produced positions and must supplement the production with any listed field it maintains that is missing, including the citizenship and visa type of the person hired for each position. Production may be anonymized with a unique identifier for each candidate. The plaintiffs may renew the requests upon identifying a specific gap in the produced data.

(2) RFP 2 is denied for round one.

(3) RFPs 3 and 9 are granted in part. Meta must produce documents sufficient to show, for each Infosys engagement or requisition for which Mr. Rajaram was proposed or considered, the candidates proposed, the person or persons selected, and each person's citizenship and visa type, to the extent that information is in Meta's possession, custody, or control. The requests are otherwise denied for round one.

(4) RFPs 4 and 5 are denied for round one, except that Meta must produce the one PERM application it has identified in connection with the positions the named plaintiffs applied to.

(5) RFPs 24, 25, and 26 are granted. Meta must produce documents sufficient to show the requested annual figures for the relevant period, company-wide for its U.S. workforce and positions and, to the extent its systems permit without disproportionate effort, for the nine job categories.

(6) RFP 28 is granted in part. Meta must produce (a) complaints and internal grievances, formal or informal, made during the relevant period by applicants for or employees in U.S. positions, alleging that Meta preferred visa holders or non-citizens over U.S. citizens in recruiting or hiring or discriminated in recruiting or hiring on the basis of citizenship or immigration status; (b) documents sufficient to show the disposition of each; and (c) any resulting charge, complaint, or demand filed with an agency, court, arbitrator, or mediator, and Meta's response. The request is

otherwise denied for round one.

(7) RFP 29 is granted in part. Meta must produce (a) the OCAHO complaint, its filings in the OCAHO proceeding, and the October 2021 settlement agreement, to the extent not already public; (b) the documents it produced to the DOJ in the investigation; and (c) documents sufficient to show the changes to its recruiting and hiring practices that it made under the settlement. The request is otherwise denied for round one.

(8) RFP 30 is denied without prejudice, except that within fourteen days, Meta must identify in writing any government investigation or inquiry during the relevant period into citizenship- or immigration-status discrimination in its U.S. recruiting or hiring.

(9) RFP 31 is granted as to the September 24, 2025 letter and any response Meta provided to the senators, and it is otherwise denied for round one.

Meta may withhold privileged material on a log that complies with Rule 26(b)(5)(A). Nothing in this order forecloses the plaintiffs from seeking class discovery in round two or decides the class period.

This resolves ECF No. 146.

**IT IS SO ORDERED.**

Dated: September 25, 2026

LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California